UNITED STATES DISTRICT COURT
FOR THE DISTRICT COURT OF MASSACHUSETTS

| | |
|---|---|
| ELIZABETH ADAM, REBECCA FOLEY, individually, and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>THE TJX COMPANIES, INC., AQ TEXTILES LLC, CREATIVE TEXTILE MILLS PVT. LTD., JOHN DOE CORPORATIONS (1-100)<br><br>        Defendants. | Case No.:<br><br>CLASS ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED |

Plaintiffs Elizabeth Adam and Rebecca Foley ("Plaintiffs") bring this action on their own behalf and on behalf of a putative class (the "Class") consisting of Plaintiffs and all others similarly situated, pursuant to the laws of the United States and Massachusetts, or, in the alternative, nationwide in all 49 other States and the District of Columbia, against The TJX Companies, Inc. ("TJX"), AQ Textiles LLC ("AQ Textiles"), Creative Textile Mills Pvt. Ltd. ("Creative Textiles"), and John Doe Corporations 1-100 (collectively "Defendants"), and allege the following based on information and belief, except for those paragraphs pertaining to Plaintiffs' own actions, which are alleged based on personal knowledge.

## **INTRODUCTION**

1.      Plaintiffs bring this action on their own behalf and on behalf of a Class consisting of Plaintiffs and all others similarly situated to redress Defendants' deceptive acts and unconscionable business practices designed to deceive and mislead consumers and the public into believing that Defendants' bedding and linen products had higher thread counts than they really have and as such were of better qualify, softer, and more comfortable for sleeping than products with lesser thread counts.  In purchasing bedding and linen products, Plaintiffs and the Class received less than what was promised by Defendants due to the improperly inflated thread counts represented on bedding and linen labels sold by Defendants.

2.      Members of the bedding and linen products industry, including the Defendants,

consistently communicate to consumers that higher thread count sheets are of better quality, softer, and more comfortable for sleeping.  As a result, consumers purchasing bedding and linen products use thread count as a primary indicator of the quality of the sheets offered for sale, and pay higher prices for higher thread count bedsheets and linens.

3.      As part of a scheme to make their bedding and linen products more attractive, boost sales, and increase profits, Defendants departed from well-established and long-standing industry standards governing the calculation and advertisement of thread counts by inflating the thread counts on the labels of the products they marketed, distributed, and/or sold.

4.      Defendants misrepresented, and continue to misrepresent, that the thread count in many of the bedding and linen products they advertise, market, distribute throughout the country, resulting in the sale of bedding and linen products represented to have greater than their true thread counts to consumers throughout the United States.   The representation of the false and misleading thread count also deceives and misleads consumers into believing that they are purchasing a product which is of higher quality, softness, or better for sleeping than products with a lower thread count.

5.      Defendants knowingly departed from following well-accepted and known industry standards for calculating thread counts, and thereby inflated thread counts to market, advertise, package, and sell their bedding and linen products.

6.      Inaccurate thread counts create reasonable but mistaken beliefs by consumers about the quality of bedding and linen products.  For example, reasonable consumers believe that a bedding package label stating that it contains 800 thread-count bedding actually contains bedding with a thread count calculated at 800 according to an honest and consistent industry standard. Likewise, consumers believe that an 800 thread-count bedding is going to be of higher quality, softer, and/or better for sleeping than lower thread-count bedding.  Consumers rely on Defendants' representations and advertising as they compare and assess products and make purchase decisions.

7.      As a direct result of Defendants' improper, deceptive, and unconscionable scheme to misrepresent bedding and linen thread counts, Plaintiffs and other Class members suffered

damages because the inflated thread counts put forth by Defendants in their products induced Plaintiffs and other members of the Class to purchase their products when Plaintiffs and other members of the Class would not have purchased them, or would only have paid a lower price for the product if they had known the actual thread counts at the time of purchase.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and defendant are citizens of different states.  This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

9.      Venue is proper in this district pursuant to 28 U.S.C. § 1391, because Defendants conduct business in this District, and have intentionally availed themselves of the laws and markets of this District, and a substantial part of the events or omissions giving rise to the claims occurred in this District.

10.     Defendant TJX's improper conduct set forth herein occurred in this District or was conceived of and executed from this District in whole or in part.  Defendants' decisions to engage in the improper conduct set forth herein were made in this District.  Some of the bedding and linen products at issue were advertised, marketed, sold and/or distributed by TJX, or its operating entities, in this district.  TJX or its operating entities directly advertised, marketed and sold bedding and linen products to consumers in this district.

11.     The harm alleged herein occurred in this District, or emanated from Defendants' improper conduct that occurred in this District, in whole or in part.

## PARTIES

12.     Plaintiff Elizabeth Adam is an adult citizen of the Commonwealth of Massachusetts.  Ms. Adam purchased a Sterling Manor Luxury Sateen Weave, queen-size sheet set, manufactured by Defendant Creative Textiles and represented to be "700 Thread Count" from Defendant TJX's T.J. Maxx retail store located at 350 Washington Street, Boston, Massachusetts 02109. *See* Ex.

A, Label on sheets purchased by Plaintiff Adam.  Plaintiff Adam relied on the thread count representations on the packaging when purchasing these sheets and believed that she was purchasing sheets with a 700 thread count and that the sheets were of higher quality, softer, and better for sleeping than sheets with lower thread counts Plaintiff Adam  paid $29.99 plus tax for this sheet set.

13.     Plaintiff Rebecca Foley is an adult citizen of the Commonwealth of Massachusetts.  Ms. Foley purchased an Ultra Lux 6 Piece queen-size sheet set, manufactured by Defendant Creative Textiles and represented to be "800 Thread Count" from Defendant TJX's T.J. Maxx / HomeGoods retail store located at 100 Cambridgeside Place, Cambridge, Massachusetts 02141. *See* Ex. B, Label on sheets purchased by Plaintiff Foley. Plaintiff Foley relied on the thread count representations on the packaging when purchasing these sheets and believed that she was purchasing sheets with an 800 thread count and that the sheets were of higher quality, softer, and better for sleeping than sheets with lower thread counts Plaintiff Adam paid $39.99 plus tax ($42.49 with tax) for this sheet set.

14.     Defendant TJX is a is a Delaware corporation, with its principal executive offices located at 770 Cochituae Road, Framingham, Massachusetts 01701.  It is authorized to do and is doing business in each and every state in the United States and in the District of Columbia and Puerto Rico through its more than 3,800 stores, including 1,186 T.J. Maxx, 1,035 Marshalls, 579 HomeGoods, and 12 Sierra Trading Posts in the United States, as well as via websites: tjmaxx.tjx.com; www.marshallsonline.com; www.homegoods.com; and www.sierratradingpost.com.  At the end of its fiscal year ending January 28, 2017, TJX reported net sales of $33,184,000,000.

15.     Defendant TJX has sold and/or sells bedding and linen products bearing at least the following names:

| | | |
|---|---|---|
| Alex & Zoe | Authentic Kids | Boat House |
| Amante Home | BCBGeneration | Boy Zone |
| AQ Textiles | Bed Tite | Brooklyn Flat |
| Artisan De Luxe | Bella Lux | Casual Elegance |
| Artisan NY | Bentley Home | Chelsea Loft |

| | | |
|---|---|---|
| Coastal Collection | Jack & Oliver | Ron Chereskin |
| Coastal Life | Jeridan Textiles | Royal Linens |
| Cynthia Rowly | Kensington | Royale Linens |
| Delia & Cleo | Laundry by Shelly Segal | Rugged Bear |
| Eddie Bauer | Laura Ashley | Signet |
| Elite Home Products | Legacy | SL Home Fashions |
| Envogue | Lil' Pixies | Sterling Manor |
| Envogue Nautical | Luxor | Stone Cottage |
| Euca Lush | Luxor - Atelier Luxe | Storehouse |
| Forever Soft | Main Street Linens | Tahari |
| Grove Hill | Maurizio Italy | Teen Vogue |
| Grove & Hollow | Max Studio | Tencel |
| Hampton House | Nate & Nat | Tommy Bahama |
| Heritage Home | Nicole Miller | Ultra Lux |
| Hillcrest | Notting Hill | Vintage Comfort |
| Home Dynamix - SoHome | Panama Jack | Westbury Manor |
| Studio | Performance Collection | West Point Home |
| Home Essential | Perry Ellis | Westport Home |
| Collections | Pure Elegance | Westwood |
| Hotel | Queen West Trading | Whimsical |
| Hotel Collection | Red Truck | Wildlife Collection |
| Imperial Collection | Riviera | Young Wild & Free |

*See* http://tjmaxx.tjx.com/store/index.jsp.

16.     Defendant Creative Textiles is a private limited company organized under the laws of the Republic of India, with its primary place of business at 212, Cama Industrial Estate, Sun Mill Compound Mumbai, Maharashtra 400013 India.

17.     Defendant AQ Textiles is a North Carolina LLC with it principal place of business and registered offices located at 214 Staunton Drive, Greensboro, North Carolina 27410.

18.     Defendant Creative Textiles manufactures and sells textiles, including the relevant sheets and bedding products, throughout the United States, through its subsidiary AQ Textiles.

19.     Defendant AQ Textiles, on behalf of Creative Textiles, imports and distributes certain of the relevant sheet and bedding products to Defendant TJX.

**FACTUAL ALLEGATIONS**

20.     For consumers purchasing bedding and linens, thread count is used as an indicator of fabric quality and a basis on which they make purchasing decisions.  As the thread count increases, so does the price that consumers are willing to pay for bedding and linens.

2

21.     The industry, including the Defendants, know that consumers will pay higher prices for linens and bedding products with a higher thread count and as such increase the price as the thread count on the products increase.

22.     Consumers rely on represented thread count as the gauge for the quality of their bedding and linen products. *See* ABC News, <u>Are Shoppers Short-Sheeted by Thread Count</u>?, November 14, 2016, *available at http://abcnews.go.com/GMA/ story?id=125380&page=1* ("Consumers who enjoy slipping under top-quality bed sheets rely on thread count as a gauge while shopping….").

23.     Consumers pay more for higher thread count sheets. *Id.* ("A single-ply 300-count can run about $55 a set, while the 600 thread-count sheets that [tested as] only a 300-count is $180 a set.").

24.     An informal survey of the prices of cotton, king-size bedding sets at online retailers in December 2016 showed that as thread count increased, so did the price for the bedding.



25.     The common or standard practice in the U.S. bedding and linen industry has been to count the number of threads in both the warp (vertical direction) and filling (horizontal direction).  Common or standard practice counts each yarn as one thread, regardless of whether the yarn was a single-ply or multi-ply yarn.

26.     The American Society for Testing and Materials' ("ASTM") Standard Test Method for Warp (End) Count and Filling (Pick) Count of Woven Fabric, Designation: D3775-12, covers the standard test method for measuring warp end count and filling pick count and is applicable to all types of woven fabric.  Section 9.1.1 of D3775-12 instructs on the appropriate method for determining thread count: "Count individual warp ends and filling picks as single units regardless of whether they are comprised of single or plied components."

27.     The terms relevant to ASTM D3775-12, and related to textiles, are defined by ASTM Designation: D123-03.  *See* Section 3, Terminology of ASTM D3775-123.       These terms, among others, include:

     **a.**     **count,** *n − in woven textiles*, the number of warp yarns (ends) and filling yarns (picks) per unit distance as counted while the fabric is held under zero tension, and is free of folds and wrinkles.

     **b.**     **end,** *n − in fabric*, an individual warp yarn (single or ply) or cord.

     **c.**     **filling,** *n −* yarn running from selvage to selvage at right angles to the warp in a woven fabric.

     **d.**     **pick,** *n −* an individual filling yarn.

     **e.**     **pick count,** *n − in woven* fabrics, the number of filling yarns per unit fabric length.

*See* ASTM D 123-03, Standard Terminology Relating to Textiles.

28.     The prior versions of ASTM D3775, going back at least to 2003, included the same instructions for proper counting under the standard.  ASTM, Standard Test Method for Warp End Count and Filling Pick Count of Woven Fabric, Designation: D3775-03a, Section 9.1.4 instructs, "Count individual warp yarns (ends) and filling yarns (picks) as single units regardless of whether they are comprised of single or plied components."

3

29.     Per ASTM D3775-12 § 9.1.4, the standard deviation of the samples tested, should be 5% or less.  In other words, the stated thread count should be within 5% of the actual thread count.

30.     However, some bedding and linen manufacturers and retailers, such as Defendants, are not adhering to the standard-based, traditional, and common industry practice.  These manufacturers and retailers double or triple the true thread count by counting plied yarns individually.

31.     According to the National Textiles Association ("NTA") and the Federal Trade Commission ("FTC"), this practice of determining thread count by counting plied yarns individually "inflates the thread count numbers to levels which double or triple (or more) the thread count as determined by the long standing, traditional way.  This practice has also created confusion in the marketplace and has caused consumers to compare thread counts that may have been calculated in two dramatically different ways."  *See* FTC Letter to National Textile Association, August 2, 2005, Ex. C.

32.     In its Letter to the National Textile Association, the FTC stated that:

> [C]onsumers could be deceived or misled by the practice of stating an inflated thread count, achieved by multiplying the actual count by the number of plies within the yarn.  A possible non-deceptive way to disclose both the thread count and the yarn ply would be to state, for example: '300 thread count, 2 ply yarn.'  A representation of '600 thread count' for this same product would likely mislead consumers about the quality of the product being purchased."

33.     The practice of counting the plies that make up each thread was also condemned by the American Textile Manufacturer's Institute ("ATMI").  In a letter sent to the FTC on January 31, 2002, Ex. D, ATMI addressed marketing of bed sheets and pillowcases to consumers with claims of extremely high yarn or thread count claims, stating that:

> Labeling these products based on a count that includes each ply in plied yarns deceives the customer into believing that bedding products with higher counts are better, when, in fact, they might be inferior because of the method used to determine the count.

> …

> In many cases, these extremely high counts are achieved by counting yarns within a ply as individual yarns, thus dramatically increasing the number of yarns in a square inch of fabric.  A plied yarn is one in which two or more yarns are twisted together to form a single strand.

ATMI believes this method of labeling products based on counting each individual yarn in plies to be a deceptive practice, which misleads the American public into making purchasing decisions to purchase items, based on false and misleading information.

ASTM method D 3775-96 (Standard Test Method for Fabric Count of Woven Fabric) [a prior version of D3775-12] the long-accepted industry standard for determining count. This method has been in use in this country for many years and serves as the industry's standard way to report the count of many woven textile fabrics, including sheeting. It is based on the number of yarns in the warp direction and filling direction, regardless of ply, and has become an important parameter used by consumers to judge the quality of sheeting products, since the higher the count, the more luxurious the product.

ATMI believes that any information provided to the consumer should be true and correct so as not to be deceptive or misleading. We believe that plied yarns are properly counted as only one yarn. For example, a fabric containing 250 individual four ply yarns in a square inch would be described as a "250 thread count fabric, even though each thread or yarn contained four plies twisted together." It would be false and misleading to describe this as a 1000 thread count product.

34.     The FTC's reply letter to ATMI dated March 18, 2002, advised how the Commission's staff would analyze claims that counting yarns within a ply as individual yarns to determine thread count was a deceptive practice. *See* Ex. D. The FTC advised that where ASTM standards existed, the Commission would give great weight to the applicable standards to determine if product claims were reasonable or deceptive:

A thread count claim, like other objective, material claims about a product, must be supported by a "reasonable basis." In determining what constitutes a reasonable basis for claims, we would consider what experts in the field believe is appropriate, including whether there are relevant consensus based test procedures, such as an ASTM test procedure, or other widely accepted industry practices that apply to the matter. If so, we would give such procedure or practices great weight in determining whether the advertiser has met its substantiation burden. In other related context, the Commission has encouraged the use of ASTM tests. *See* Press Release, FTC Announces Actions on Wool Labeling Rules, dated March 8, 1994 (copy attached) ("In its clarification of the procedure used for testing the fiber content of wool products, the FTC said the industry members should, where possible, use procedures established by the American Society for Testing and Materials (ASTM).").

35.     Despite these long-standing industry standards for calculating thread counts, and the likelihood that deviating from the standards would mislead and deceive consumers, Defendants manufactured, marketed, advertised, sold and/or distributed bedding and linen products with inflated thread counts.

36.     Defendant TJX represented that numerous bedding and linen products were of a certain

thread count, but when measured in accordance with industry standards, these thread counts were far less than claimed because Defendant improperly counted the plies making up the threads in their linens rather than the threads themselves.

37.     Plaintiff Adam purchased a Sterling Manor Luxury Sateen Weave brand sheet set, imported by Defendant AQ Textiles and manufactured by Defendant Creative Textiles, which was represented to be "700 Thread Count," from Defendant TJX's retail store located at 350 Washington Street, Boston, Massachusetts.  However, the true thread count of those sheets was 245.  Plaintiff Roley purchased an Ultra Lux brand sheet set, imported by Defendant AQ Textiles and manufactured by Defendant Creative Textiles, which was represented to be "800 Thread Count," from Defendant TJX's retail store located at 100 Cambridgeside Pl., Cambridge, MA 02141.  However, the true thread count of those sheets was 230.

38.     Other sheets and bedding products, besides those purchased by Plaintiffs, are advertised and packaged with false thread counts.

39.     For example, the Somerset-Luxury Sateen sheets also manufactured and imported, respectively, by Defendants Creative Textiles and AQ Textiles, were represented to be 900 Thread Count.  However, when measured in accordance with industry standards, these sheets actually had a 249 Thread Count.

40.     Similarly, other Ultra Lux sheets, also manufactured and imported, respectively, by Defendants Creative Textiles and AQ Textiles, were represented to be 1200 Thread Count. However, when measured in accordance with industry standards, these sheets actually had a 248 Thread Count.

41.     Hotel Collection sheets, also manufactured and imported by Defendants Creative Textiles and AQ Textiles, were represented to be 800 Thread Count.  However, when measured in accordance with industry standards, these sheets actually had a 423 Thread Count.

42.     On information and belief, numerous other brands and marks sold by Defendants and other retailers are marketed with false thread counts.

43.     Defendants made false representations as to the thread count of their sheets and bedding products on the website http://tjmaxx.tjx.com/store/index.jsp, as well as in all the retail TJX

stores stocked with the relevant goods.

44.     Defendants' representations regarding the thread counts of their bedding and linen products were deceptive and misleading according to both the industry standard and the FTC's guidelines for accurately describing thread counts.

45.     By improperly inflating thread counts contrary to industry standards, Defendants have engaged in, and continue to engage in, practices which are unconscionable, deceptive, and fraudulent, and which are based on false pretenses, false promises, misrepresentations, and the knowing concealment, suppression, or omission of material facts with the intent that others rely on such concealment, suppression, or omission in their manufacturing, advertising, marketing, selling, and distribution of bedding and linen products.

46.     As a direct and proximate result of Defendants' improper conduct, Plaintiffs and Class Members paid more for bedding and linen products which Defendants represented had inflated thread counts.

47.     By representing that their products had higher thread counts than they actually had, Defendants unjustly profited from the sale of such bedding and linen products to consumers.

48.     The inflated thread counts put forth by Defendants in their products induced Plaintiffs and other members of the Class to purchase their products when Plaintiffs and other members of the Class would not have purchased them, or would only have paid a lower price for the product if they had known the actual thread counts at the time of purchase.

## CLASS ACTION ALLEGATIONS

49.      Plaintiffs brings this class action pursuant to Rule 23 of the Federal Rules of Civil Procedure and seek to represent a Nationwide Class comprised of:

> **Nationwide Class:**
>
> All persons in the United States that purchased bedding or linen from Defendants for personal, family, or household purposes that Defendants represented as having thread counts higher than the bedding or linen's actual thread counts.

50.     In the alternative to the Nationwide Class, and pursuant to Federal Rules of Civil Procedure Rule 23(c)(5), Plaintiffs seeks to represent a state-based Subclass consisting of members from Massachusetts, as well as any subclasses or issue classes that Plaintiffs may

propose and/or the Court may designate at the time of class certification. The alternative Commonwealth of Massachusetts Subclass could be defined as follows:

**Massachusetts State Class:**

All persons in Massachusetts that purchased bedding or linen products from Defendants that were represented as having thread counts that were higher than their actual thread counts.

51.     In the alternative to the Nationwide Class, Massachusetts State Class, and pursuant to Federal Rules of Civil Procedure Rule 23(c)(5), Plaintiffs seeks to represent a Nationwide Class and/or Classes (the "Subclasses") consisting of members from the other 49 States and the District of Columbia, as well as any subclasses or issue classes that Plaintiffs may propose and/or the Court may designate at the time of class certification. The alternative state-based Classes could be defined as follows:

**Alabama State Class:**

All persons in Alabama that purchased bedding or linen products from Defendants that were represented as having thread counts that were higher than their actual thread counts.

**Alaska State Class:**

All persons in Alaska that purchased bedding or linen products from Defendants that were represented as having thread counts that were higher than their actual thread counts.

**Arizona State Class:**

All persons in Arizona that purchased bedding or linen products from Defendants that were represented as having thread counts that were higher than their actual thread counts.

**Arkansas State Class:**

All persons in Arkansas that purchased bedding or linen products from Defendants that were represented as having thread counts that were higher than their actual thread counts.

**California State Class:**

All persons in California that purchased bedding or linen products from Defendants that were represented as having thread counts that were higher than their actual thread counts.

**Colorado State Class:**

All persons in Colorado that purchased bedding or linen products from Defendants that were represented as having thread counts that were higher than their actual thread counts.

**Connecticut State Class:**

All persons in Connecticut that purchased bedding or linen products from Defendants that were represented as having thread counts that were higher than their actual thread counts.

**Delaware State Class:**

All persons in Delaware that purchased bedding or linen products from Defendants that were represented as having thread counts that were higher than their actual thread counts.

**District of Columbia State Class:**

All persons in District of Columbia that purchased bedding or linen products from Defendants that were represented as having thread counts that were higher than their actual thread counts.

**Florida State Class:**

All persons in Florida that purchased bedding or linen products from Defendants that were represented as having thread counts that were higher than their actual thread counts.

**Georgia State Class:**

All persons in Georgia that purchased bedding or linen products from Defendants that were represented as having thread counts that were higher than their actual thread counts.

**Hawaii State Class:**

All persons in Hawaii that purchased bedding or linen products from Defendants that were represented as having thread counts that were higher than their actual thread counts.

**Idaho State Class:**

All persons in Idaho that purchased bedding or linen products from Defendants that were represented as having thread counts that were higher than their actual thread counts.

**Illinois State Class:**

All persons in Illinois that purchased bedding or linen products from Defendants that were represented as having thread counts that were higher than their actual thread counts.

**Indiana State Class:**

All persons in Indiana that purchased bedding or linen products from Defendants that were represented as having thread counts that were higher than their actual thread counts.

**Iowa State Class:**

All persons in Iowa that purchased bedding or linen products from Defendants that were represented as having thread counts that were higher than their actual thread counts.

**Kansas State Class:**

All persons in Kansas that purchased bedding or linen products from Defendants that were represented as having thread counts that were higher than their actual thread counts.

**Kentucky State Class:**

All persons in Kentucky that purchased bedding or linen products from Defendants that were represented as having thread counts that were higher than their actual thread counts.

**Louisiana State Class:**

All persons in Louisiana that purchased bedding or linen products from Defendants that were represented as having thread counts that were higher than their actual thread counts.

**Maine State Class:**

All persons in Maine that purchased bedding or linen products from Defendants that were represented as having thread counts that were higher than their actual thread counts.

**Maryland State Class:**

All persons in Maryland that purchased bedding or linen products from Defendants that were represented as having thread counts that were higher than their actual thread counts.

**Michigan State Class:**

All persons in Michigan that purchased bedding or linen products from Defendants that were represented as having thread counts that were higher than their actual thread counts.

**Minnesota State Class:**

All persons in Minnesota that purchased bedding or linen products from Defendants that were represented as having thread counts that were higher than their actual thread counts.

**Mississippi State Class:**

All persons in Mississippi that purchased bedding or linen products from Defendants that were represented as having thread counts that were higher than their actual thread counts.

**Missouri State Class:**

All persons in Missouri that purchased bedding or linen products from Defendants that were represented as having thread counts that were higher than their actual thread counts.

**Montana State Class:**

All persons in Montana that purchased bedding or linen products from Defendants that were represented as having thread counts that were higher than their actual thread counts.

**Nebraska State Class:**

All persons in Nebraska that purchased bedding or linen products from Defendants that were represented as having thread counts that were higher than their actual thread counts.

**Nevada State Class:**

All persons in Nevada that purchased bedding or linen products from Defendants that were represented as having thread counts that were higher than their actual thread counts.

**New Hampshire State Class:**

All persons in New Hampshire that purchased bedding or linen products from Defendants that were represented as having thread counts that were higher than their actual thread counts.

**New Jersey State Class:**

All persons in New Jersey that purchased bedding or linen products from Defendants that were represented as having thread counts that were higher than their actual thread counts.

**New Mexico State Class:**

All persons in New Mexico that purchased bedding or linen products from Defendants that were represented as having thread counts that were higher than their actual thread counts.

**New York State Class:**

All persons in New York that purchased bedding or linen products from Defendants that were represented as having thread counts that were higher than their actual thread counts.

**North Carolina State Class:**

All persons in North Carolina that purchased bedding or linen products from Defendants that were represented as having thread counts that were higher than their actual thread counts.

**North Dakota State Class:**

All persons in North Dakota that purchased bedding or linen products from Defendants that were represented as having thread counts that were higher than their actual thread counts.

**Ohio State Class:**

All persons in Ohio that purchased bedding or linen products from Defendants that were represented as having thread counts that were higher than their actual thread counts.

**Oklahoma State Class:**

All persons in Oklahoma that purchased bedding or linen products from Defendants that were represented as having thread counts that were higher than their actual thread counts.

**Oregon State Class:**

All persons in Oregon that purchased bedding or linen products from Defendants that were represented as having thread counts that were higher than their actual thread counts.

**Pennsylvania State Class:**

All persons in Pennsylvania that purchased bedding or linen products from Defendants that were represented as having thread counts that were higher than their actual thread counts.

**Rhode Island State Class:**

All persons in Rhode Island that purchased bedding or linen products from Defendants that were represented as having thread counts that were higher than their actual thread counts.

**South Carolina State Class:**

All persons in South Carolina that purchased bedding or linen products from Defendants that were represented as having thread counts that were higher than their actual thread counts.

**South Dakota State Class:**

All persons in South Dakota that purchased bedding or linen products from Defendants that were represented as having thread counts that were higher than

their actual thread counts.

**Tennessee State Class:**

All persons in Tennessee that purchased bedding or linen products from Defendants that were represented as having thread counts that were higher than their actual thread counts.

**Texas State Class:**

All persons in Texas that purchased bedding or linen products from Defendants that were represented as having thread counts that were higher than their actual thread counts.

**Utah State Class:**

All persons in Utah that purchased bedding or linen products from Defendants that were represented as having thread counts that were higher than their actual thread counts.

**Vermont State Class:**

All persons in Vermont that purchased bedding or linen products from Defendants that were represented as having thread counts that were higher than their actual thread counts.

**Virginia State Class:**

All persons in Virginia that purchased bedding or linen products from Defendants that were represented as having thread counts that were higher than their actual thread counts.

**Washington State Class:**

All persons in Washington that purchased bedding or linen products from Defendants that were represented as having thread counts that were higher than their actual thread counts.

**West Virginia State Class:**

All persons in West Virginia that purchased bedding or linen products from Defendants that were represented as having thread counts that were higher than their actual thread counts.

**Wisconsin State Class:**

All persons in Wisconsin that purchased bedding or linen products from Defendants that were represented as having thread counts that were higher than their actual thread counts.

**Wyoming State Class:**

All persons in Wyoming that purchased bedding or linen products from Defendants that were represented as having thread counts that were higher than

their actual thread counts.

52.     The class period commences on the first date that Defendants manufactured, marketed, advertised, sold and/or distributed the offending bedding and linen products and ending on the date that the Court certifies this suit as a class action.

53.     Excluded from the Class (and in the alternative, the Subclasses defined above) are Defendants, any parent, subsidiary, affiliate, or controlled person of Defendants, as well as the officers, directors, agents, servants, or employees of Defendants.

54.     The Class is so numerous that joinder of all members is impracticable.  The disposition of these claims in a class action will provide benefits to the parties, Class members, and the Court.

55.     Although the Class members' identities and numbers are presently unknown, Defendants' records can readily determine this information using objective criteria.  The Nationwide Class likely consists of hundreds of thousands of purchasers throughout the United States.  The Massachusetts State Class likely consists of thousands of purchasers throughout Massachusetts.

56.     Defendants' policy and practice of inflating thread counts and misrepresenting thread counts to consumers has affected all members of the Class.  As such, there are many common questions of law and fact among Plaintiffs and the members of the Class, which predominate over questions affecting individual Class members.  Common questions include, but are not limited to, the following:

  a.     Whether ASTM D3775 Standard Test Method for Warp (End) and Filling (Pick) Count of Woven Fabrics was the generally accepted method in the textile industry for calculating thread count during the relevant time period.

  b.     Whether Defendants knew or should have known that ASTM D3775 was the generally accepted method in the textile industry for calculating thread count during the relevant time period.

  c.     Whether Defendants misrepresented thread counts on their bedding and linen products contrary to industry standards and in contravention of ASTM D3775;

  d.     Whether Defendants manufactured, advertised, sold, or delivered for sale bedding and linen products that were advertised or represented to be of a certain thread

14

count, but were, in fact, of a lesser thread count;

e.   Whether Defendants knew or should have known persons would rely on the inflated thread counts in making their purchase decision;

f.   Whether Defendants were negligent in representing thread counts on their bedding and linen products contrary to industry standards and in contravention of ASTM D3775;

g.   Whether Defendants fraudulently concealed that the thread counts and their bedding and linen products were inflated, contrary to industry standards and in contravention of ASTM D3775;

h.   Whether Defendants' inflated thread counts violated the laws of the United States or the Commonwealth of Massachusetts;

i.   Whether Defendants are liable for violation of the laws of the United States or the Commonwealth of Massachusetts;

j.   Whether Defendants' misrepresentations caused damages to members of the Class and the extent of those damages;

k.   Whether Defendants were unjustly enriched, and, if so, the extent to which they were unjustly enriched; and

l.   Whether Defendants should be enjoined from future conduct of the type complained of herein.

57.   Plaintiffs' claims are representative of the putative Class because their claims are typical of the claims of the Class members, and rely on Defendants' misrepresentations and application of an industry standard.  If brought and prosecuted individually, the claims of each putative Class member would require proof of the same materials and substantive facts, rely on the same remedial theories, and seek the same relief.

58.   Plaintiffs will fairly and adequately protect the interests of the Class, and have retained attorneys experienced in class and complex litigation as counsel.

59.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  A class action will permit an orderly and expeditious administration of the

claims of the Class, will foster economies of time, effort, and expense, and will insure uniformity of decisions.  The prosecution of individual actions by Class members would create the risk of (a) inconsistent or varying adjudications with respect to individual Class members; and (b) be grossly impracticable because the cost of vindicating an individual Class member's claim would likely exceed the value of the claim.

60.     Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

61.     Due to the relatively small amounts of damaged to each member of the Class, a class action is superior to other available methods for the fair and efficient adjudication of the controversy which is subject of this action.

62.     The interests of judicial economy will be served by concentrating litigation concerning these claims in this Court, and there is no known difficulty that would be encountered in the management of this Class.

## EQUITABLE TOLLING

63.     Despite knowing that their bedding and linen products were defective because they did not contain the qualities that Defendants advertised - specifically with regard to thread counts - and Defendants concealed their defective nature from Plaintiff and the Class by affirmatively marketing and advertising their products as having certain qualities that they did not have.

64.     Plaintiff and Class members did not and could not have known that their bedding and linen did not have the qualities that it was advertised to have, as this fact was not disclosed to them and was not apparent from a superficial inspection the products.

65.     Plaintiff and Class members could not have discovered the defective nature of Defendants' products through the exercise of due diligence.

66.     Due to Defendants' fraudulent concealment of the defects associated with their products, Defendants are estopped from asserting statute of limitations defenses to any of the claims alleged herein.

## COUNT ONE

### Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

67.     Plaintiffs incorporate by reference all of the allegations in this Complaint as though fully set forth herein.

68.     Plaintiffs bring this Count on behalf of themselves and the Nationwide Class, or, in the alternative, the State Subclasses.

69.     This Court has jurisdiction to decide claims brought under the Magnuson-Moss Warranty Act (for the purpose of this Count, the "Act") by virtue of 28 U.S.C. § 1332(a)-(d).

70.     Defendants are "suppliers" and "warrantors" within the meaning of 15 U.S.C. § 2301(4) and (5) and/or (7) because they regularly sell sheets and bedding products with a written and/or implied warranty guaranteeing that their products have a certain thread count and a certain corresponding quality.

71.     Plaintiffs and other Class Members are "consumers" who purchased "consumer products" for purposes of 15 U.S.C. § 2301(1) and (3) because they purchased sheets and bedding products for personal, family, or household purposes.

72.     The sheets and bedding products are "consumer products" within the meaning of the Act. 15 U.S.C. § 2301(1).

73.     The Act provides a cause of action for any consumer who suffers damages because of the failure of a warrantor to comply with a written or implied warranty. 15 U.S.C. § 2310(d)(1).

74.     The amount in controversy of the Plaintiffs' individual claims meets or exceeds $25.00 in value. In addition, the amount in controversy meets or exceeds $50,000 in value (exclusive of interest and costs) on the basis of all claims to be determined in this suit.

75.     Under the Act, damaged "consumers" have a private cause of action against any warrantor that fails to comply with a written or implied warranty.

76.     Under the Act, damaged consumers have a private cause of action against any warrantor that fails to comply with a written or implied warranty.

77.     Defendants provided Plaintiffs and the Nationwide Class with the following express

warranty: that the sheeting and bedding products had a certain true and accurate thread count.

78.     These express warranties constitute written warranties within the meaning of 15 U.S.C. § 2301(6).

79.     The sheets and bedding products' implied warranties are covered by 15 U.S.C. § 2301(7).

80.     The terms of written warranties and implied warranties became part of the basis of the bargain among Plaintiffs (and all other Class Members) and Defendants when Plaintiffs (and all other Class Members) were deciding to purchase the sheets or bedding products.

81.     Defendants breached these written and implied warranties as described in detail above.

82.     Without limitation, the sheets and bedding products had actual thread counts lower than the ones warranted and advertised.

83.     Plaintiffs and each of the other Nationwide Class members have had sufficient direct dealings with Defendant TJX to establish privity of contract.  Nonetheless, privity is not required here because Plaintiffs and each of the other Nationwide Class members are intended third-party beneficiaries of contracts between Creative Textiles, AQ Textiles, and TJX, and specifically, of Creative Textiles' and AQ Textiles' warranties.  Defendant TJX was not intended to be the ultimate consumer of the sheets and bedding products and has no rights under the warranty agreements attaching to the products, which were for benefit of the consumers only.

84.     Affording Defendants a reasonable opportunity to cure their breaches of warranty would be unnecessary and futile here. At the time of sale of the sheets and bedding products, Defendants knew, should have known, or were reckless in not knowing of the misrepresentations concerning the products' thread count, but nonetheless failed to rectify the situation.  Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiffs resort to an informal dispute resolution procedure and/or afford Defendants a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

85.     As a direct and proximate result of Defendants' breach of the written warranties and the implied warranty of merchantability, Plaintiffs and Class Members have suffered damages in an amount to be determined at trial.

18

86.     Plaintiffs, individually and on behalf of a Nationwide Class, or, alternatively, on behalf of the Massachusetts State Class, seek all damages permitted by law, including a full refund of the purchase price for the sheets, compensation for the monetary difference between the sheets and bedding products as warranted and as sold, incidental and consequential damages, statutory attorney fees, and all other relief allowed by law.

## COUNT TWO

### Breach of Implied Warranty of Merchantability

### (Based on Massachusetts Law)[1]

87.     Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

88.     Plaintiffs bring this Count on behalf of themselves and the Nationwide Class, or, in the alternative, the Massachusetts State Class and/or the State Subclasses.

89.     Under Massachusetts law, goods to be merchantable must at least be such as (a) pass without objection in the trade under the contract description; and (b) in the case of fungible goods, are of fair average quality within the description; and (c) are fit for the ordinary purposes for which such goods are used; and (d) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and (e) are adequately contained, packaged, and labeled as the agreement may require; and (f) conform to the promises or affirmations of fact made on the container or label, if any. ALM GL ch. 106, § 2-314.

90.     TJX's falsely labeled and advertised products violated the implied warranty of merchantability because as falsely labeled in violation of, at least, federal and industry standards, they were contraband and thus incapable of complying with ALM GL ch. 106, § 2-314(a)-(e). In addition, because of the false thread count statements on the labels, TJX's products failed to conform to the promises or affirmations of fact made on the container or label of these products and thus breached the implied warranty of merchantability.

---

[1] Substantially similar statutes exist in each of the other 49 states and the District of Columbia, which would permit the alternatively plead state-based classes to pursue claims similar to the Massachusetts' law-based claims in Counts II-VII.

91.     Implied in the purchase of the products by Plaintiffs and the Class is the warranty that the purchased products are legal and can be lawfully sold or resold and are not contraband.

92.     Implied in the purchase of the products by Plaintiffs and the Class is the warranty that the purchased products are properly labeled and packaged.

93.     Upon information and belief, TJX sold the sheets and bedding products knowing they were falsely labeled.

94.     Falsely labeled products are contraband.

95.     Plaintiffs would not have knowingly purchased products that were illegal, falsely labeled, contraband, or unsellable.

96.     Plaintiffs would not have knowingly purchased products that were illegal to sell or resell.

97.     No reasonable consumer would knowingly purchase products that are illegal, falsely labeled, contraband, or unsellable.

98.     No reasonable consumer would purchase products that cannot be legally sold or resold.

99.     The purchased sheets and bedding products were unfit for the ordinary purpose for which Plaintiffs and the Class purchased them.

100.    As falsely labeled products that could not be legally sold or resold, the sheets and bedding products were not merchantable.

101.    As a result, Plaintiffs and the Class were injured through their purchase of unsuitable, useless, illegal, misbranded, and unsellable products.

102.    Plaintiff would not have purchased their sheets and bedding products if Plaintiff knew they failed to conform to the promises and affirmations of fact made on the container or label of these products and thus breached the implied warranty of merchantability.

103.    By reason of the foregoing, Plaintiffs and the Class were damaged in the amount they paid for the falsely labeled sheets and bedding products, together with punitive damages.

## COUNT THREE

### Breach of Express Warranty

### (Based on Massachusetts Law)

104.    Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

105.    Plaintiffs bring this Count on behalf of themselves and the Nationwide Class, or, in the alternative, the Massachusetts State Class and/or the State Subclasses.

106.    Plaintiffs and the Class were the intended targets of TJX's misrepresentations.

107.    Plaintiffs and the Class reasonably relied on TJX's misrepresentations.

108.    TJX's affirmations of fact and/or promises relating to their sheets and bedding products created express written warranties that the products would conform to TJX's affirmations of fact and/or promises.

109.    Alternatively, TJX's descriptions of their sheets and bedding products became part of the bases of the bargains, creating express written warranties that the products purchased by Plaintiffs and Class Members would conform to TJX's descriptions and specifications.

110.    In fact, the sheets and bedding products purchased by Plaintiff and the Class did not so conform to the descriptions and specifications.

111.    TJX expressly warrants on the labels of the sheets and bedding products that they have certain thread counts.  In fact, the products' thread counts are lower than promised and warranted.

112.    Plaintiffs and members of the Class relied on TJX's false representations as to the sheets and bedding products' thread counts.

113.    TJX has breached its express warranty.

114.    As a result of the foregoing, the Plaintiffs and the Class Members have suffered damages in that the value of the products they purchased was less than warranted by TJX.

115.    Plaintiffs and the Class were injured as a result of TJX's breach of their express warranties about their sheets and bedding products.

116.    By reason of the foregoing, Plaintiffs and the Class were damaged in the amount they paid for the falsely labeled sheets and bedding products, together with punitive damages.

## COUNT FOUR

### Negligence

### (Based on Massachusetts Law)

117.    Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

118.    Plaintiffs bring this Count on behalf of themselves and the Nationwide Class, or, in the alternative, the Massachusetts State Class and/or the State Subclasses.

119.    Defendants were in the business of manufacturing, marketing, and/or selling sheets and bedding products.

120.    Defendants had a legal duty to their customers to represent the thread counts on their sheets and bedding products truthfully and accurately, and in accordance with industry standards, because they chose to label their sheets and bedding products with thread count information.

121.    Defendants failed to exercise that degree of care that an ordinary, reasonable, cautious, and prudent person would exercise if they were manufacturing, marketing, and/or selling sheets and bedding products and labeling them with thread count information.

122.    As a result of Defendants' failure to exercise that degree of care, Plaintiffs and members of the Class were injured when they purchased Defendants' sheets and bedding products with inaccurate thread count information.

## COUNT FIVE

### Fraud

### (Based on Massachusetts Law)

123.    Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

124.    Plaintiffs bring this Count on behalf of themselves and the Nationwide Class, or, in the alternative, the Massachusetts State Class and/or the State Subclasses.

125.    Defendants designed, manufactured, marketed, and/or sold sheets and bedding products with falsely inflated thread counts to Plaintiff and the Class. Defendants represented to Plaintiff and the Class in advertising, packaging, product descriptions, and other forms of communication, including standard and uniform material, that the sheets and bedding products had higher thread counts than their true thread counts.

22

126.     Defendants were aware of or should have been aware of the falsity of these representations.

127.     Plaintiffs and the Class reasonably relied upon Defendants' deception.  Plaintiffs and the Class had no way of knowing that Defendants' representations were false and/or misleading, and contrary to long-standing industry standards.  As consumers, Plaintiffs and the Class did not and could not unravel Defendants' deception on their own. Rather, Defendants intended to deceive Plaintiff and the Class by concealing the true facts about the products' thread counts.

128.     Defendants' representations were material to consumers because the representations were directly relevant to the value and quality of the products.

129.     Plaintiffs, individually and on behalf of the Class, seeks all damages permitted by law, including full refund of the purchase price for the sheets, compensation for the monetary difference between the sheets and bedding products as warranted and as sold, incidental and consequential damages, statutory attorney fees, and all other relief allowed by law

## COUNT SIX

### Negligent Misrepresentation

### (Based on Massachusetts Law)

130.     Plaintiffs repeat and reallege all preceding paragraphs as if fully set forth herein.

131.     Plaintiffs bring this Count on behalf of themselves and the Nationwide Class, or, in the alternative, the Massachusetts State Class and/or the State Subclasses.

132.     Defendants owed the Plaintiffs and the Class a duty of care to design, develop, test, manufacture, distribute, market, and sell bedding and linen products which were labeled in accordance with industry standards.

133.     Defendants breached their duty of care by labeling bedding and linen products with labels that inflated the thread counts.

134.     Defendants were aware, or reasonably should have been aware, that their bedding and linen products did not have the thread counts that they represented they had pursuant to industry standards for thread counts.

135.     When they purchased Defendants' bedding and linen products, Plaintiffs and the Class

members could not be aware and were not aware that the thread counts represented on those products did not conform with industry standards.

136.    The inflated thread counts on Defendants' bedding and linen products resulted in damage to the Plaintiff in that the Plaintiff would not have purchased those products if they had known that the represented thread counts did not meet the actual thread counts.

137.    As a direct and proximate result of Defendants' negligent misrepresentation, the Plaintiff and the Class have sustained, are sustaining, and will sustain damages and losses as alleged herein.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all claims so triable as a matter of right pursuant to Federal Rule of Civil Procedure 38(b).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and the putative Class Members pray that the Court enter judgment for them and against Defendants as follows:

a.    Certifying the Class pursuant to Rule 23 of the Federal Rules of Civil Procedure, certifying Plaintiffs as the representatives of the Class, and designating Plaintiffs' counsel as counsel for the Class;

b.    Declaring that Defendants' acts and practices, as described herein, constitute deceptive acts and unconscionable business practices that are unlawful under the applicable statutory and common law.

c.    Awarding Plaintiffs and the Class permanent injunctive relief prohibiting, restraining, and enjoining defendants from engaging in the conduct complained of herein, including, but not limited to, manufacturing, marketing, advertising, selling, and distributing bedding and linen products that have inflated thread counts;

d.    Directing Defendants to disgorge profits from its misleading and deceptive practices and to pay restitution to the Class;

e.    Awarding Plaintiffs and the Class actual, compensatory damages in an amount to

be proven;

f.     Awarding Plaintiffs and the Class restitution of all monies paid to Defendants as a
       result of unlawful, deceptive, and unfair business practices;

g.     Awarding Plaintiffs and the Class exemplary damages in an amount to be proven;

h.     Ordering Defendants to issue corrective advertising;

i.     Awarding Plaintiffs and the Class reasonable attorneys' fees, experts witness fees,
       pre- and post-judgment interest, and other costs in amounts to be determined by
       the Court; and

j.     Granting any other further legal or equitable relief as this Court deems
       appropriate.

Date:   July 10, 2017                  MIRABELLA LAW LLC

                                       By:
                                            _/s/ Erica Mirabella_____
                                            Erica Mirabella    (BBO 676750)
                                            MIRABELLA LAW LLC
                                            132 Boylston St. 5th Floor
                                            Boston, MA 02116
                                            Telephone: (855) 505-5342
                                            erica@mirabellallc.com

                                            Charles LaDuca
                                            Jennifer E. Kelly
                                            CUNEO GILBERT & LADUCA LLP
                                            4725 Wisconsin Avenue, NW, Suite 200
                                            Washington, DC 20016
                                            Telephone: (202)789-3960
                                            Facsimile: (202) 789-1813
                                            charles@cuneolaw.com
                                            jkelly@cuneolaw.com

                                            Matthew Prewitt (CA: _291593_)
                                            CUNEO GILBERT & LADUCA LLP
                                            16 Court Street
                                            Suite 1012
                                            Brooklyn, NY 11241
                                            Telephone: (202)789-3960
                                            Facsimile: (202) 789-1813
                                            mprewitt@cuneolaw.com

Michael McShane
AUDET & PARTNERS, LLP
771 Van Ness Avenue
Suite 500
San Francisco, CA 94102
Telephone: (415) 568-2555
Facsimile: (415) 568-2556
mmcshane@audetlaw.com

Charles Schaffer
LEVIN SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Telephone: (877) 882-1011
Facsimile: (215) 592-4663
cschaffer@lfsblaw.com

*Attorneys for Plaintiffs*