UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ELIZABETH ADAM and REBECCA FOLEY | : | |
| Individually and on behalf of all others | : | |
| similarly situated, | : | |
| | : | |
| Plaintiffs, | : | Case No.:  1:17-cv-11260-MLW |
| | : | |
| v. | : | |
| | : | |
| THE TJX COMPANIES, INC., AQ | : | |
| TEXTILES LLC, CREATIVE TEXTILE | : | |
| PVT. LTD., JOHN DOE COPORATIONS | : | |
| (1-100), | : | |
| | : | |
| Defendants. | : | |
| | : | |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT
CREATIVE TEXTILE MILLS PVT. LTD.'S MOTION TO DISMISS COMPLAINT**

### Table of Contents

INTRODUCTION ..................................................................................................................1

FACTUAL BACKGROUND .................................................................................................1

ARGUMENT .......................................................................................................................4

   I. Personal jurisdiction exists over Creative...................................................................4

      A. The Massachusetts long-arm statute authorizes jurisdiction over Creative .......................4

      B. The exercise of jurisdiction over Creative comports with the Due Process Clause. ...........6

         1. Relatedness. .................................................................................................................6

         2. Purposeful availment. ....................................................................................................7

         3. Fair and reasonable. ......................................................................................................10

   II. Plaintiffs' claims should not be dismissed under Rule 12(b)(6). .........................................13

   CONCLUSION....................................................................................................................14

## **Table of Authorities**

**Cases**

*Access Now, Inc. v. Otter Products*, 280 F. Supp. 3d 287 (D. Mass. 2017) ................................. 7

*Alvarado Aguilera v. Negrón*, 509 F.3d 50 (1st Cir. 2007) ........................................................ 13

*Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102 (1987).................................. 8, 9

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) ................................................................................. 14

*Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc.*, 825 F.3d 28

   (1st Cir. 2016) ................................................................................................................ passim

*Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426 (6th Cir. 2008)................................... 14

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ....................................................................... 14

*Blu Homes, Inc. v. Kaufmann*, CIV.A. 10-11418-DJC, 2011 WL 3290362

   (D. Mass. July 29, 2011) ....................................................................................................... 13

*BlueTarp Fin., Inc. v. Matrix Constr. Co.*, 709 F.3d 72 (1st Cir. 2013)...................................... 11

*Burger King v. Rudzewicz*, 471 U.S. 462 (1985) ....................................................................... 13

*C.W. Downer & Co. v. Bioriginal Food & Sci. Corp.*, 771 F.3d 59 (1st Cir. 2014) ................... 11

*California Brewing Co. v. 3 Daughters Brewing LLC*, No. 215CV02278KJMCMK,

   2016 WL 1573399 (E.D. Cal. Apr. 19, 2016).......................................................................... 10

*Celgard v. SK Innovation Co., Ltd.*, No. 3:13–CV–00254–MOC, 2013 WL 7088637

   (W.D.N.C. Nov. 26, 2013) ........................................................................................................ 5

*Duarte v. Koki Holdings America, Ltd.*, No. CV 19-11995-RGS, 2018 WL 6179511

   (D. Mass. Nov. 27, 2018). ........................................................................................................ 5

*Edvisors Network, Inc. v. Educ. Advisors, Inc.*, 755 F. Supp. 2d 272

   (D. Mass. 2010)................................................................................................................. 12, 13

*Grice v. VIM Holdings Grp., LLC*, 280 F. Supp. 3d 258 (D. Mass. 2017) .............................. 8, 11

*Hannon v. Beard*, 524 F.3d 275 (1st Cir. 2008) ........................................................ 11

*Hilsinger Co. v. Fbw Invs.*, 109 F. Supp. 3d 409 (D. Mass. 2015)....................................... passim

*Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*,

    326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) ...................................................... 6

*J. McIntyre Mach., Ltd. v. Nicastro*, 131 S. Ct. 2780 (2011) ........................................ 8

*Katz v. Spiniello Companies*, 244 F. Supp. 3d 237 (D. Mass. 2017)................................... 6

*Kernan v. Kurz-Holdings, Inc.*, 175 F.3d 236 (2d Cir. 1999)........................................ 5

*Kernius v. Int'l Elecs., Inc.*, 433 F. Supp. 2d 621 (D. Md. 2006) .................................. 8

*Liu v. DeFelice*, 6 F. Supp. 2d 106 (D. Mass. 1998) ............................................... 9

*Matos v. Seton Hall Univ.*, 102 F. Supp. 3d 375 (D. Mass. 2015) ................................... 7

*Micheli v. Techtronic Indus.*, No. 11-10503, 2012 WL 6087383 (D. Mass. Mar. 1, 2013) ........... 6

*Moura v. New Prime, Inc.*, No. CV 4:17-40166-TSH, 2018 WL 4907528

    (D. Mass. Oct. 9, 2018) ........................................................................ 11, 12

*Mullaly v. Sunrise Senior Living Mgmt., Inc.*, 224 F. Supp. 3d 117 (D. Mass. 2016)................... 5

*Nowak v. Tak How Invs., Ltd.*, 94 F.3d 708 (1st Cir. 1996) ........................................ 6, 12

*Pritzker v. Yari*, 42 F.3d 53 (1st Cir. 1994) ..................................................... 11

*Renner v. Lanard Toys, Ltd.*, 33 F.3d 277 (3d Cir. 1994) .......................................... 5

*Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1 (1st Cir. 2007) ............................. 14

*Scheuer v. Rhodes*, 416 U.S. 232 (1974) ........................................................... 13

*Sigros v. Walt Disney World Co.*, 129 F. Supp. 2d 56 (D. Mass. 2001)............................... 7

*Sunview Condo. Ass'n v. Flexel Int'l*, 116 F.3d 962 (1st Cir. 1997) ............................... 13

*Surpitski v. Hughes-Keenan Corp.*, 362 F.2d 254 (1st Cir. 1966).................................... 13

*Systemation, Inc. v. Engel Industries, Inc.*, 992 F. Supp. 58 (D. Mass. 1997) ............................ 10

*Ticketmaster–New York, Inc.v. Alioto*, 26 F.3d 201 (1st Cir.1994). ................................................ 4

*UTC Fire & Sec. Am. Corp. v. NCS Power, Inc.*, 844 F. Supp. 2d 366 (S.D.N.Y. 2012) .............. 8

*Valentin v. Hosp. Bella Vista*, 254 F.3d 358 (1st Cir. 2001) ......................................................... 8

**Rules**

Fed. R. Civ. P. 12 ................................................................................................................. 13

Mass. Gen. Laws. ch. 223A, § 3 ............................................................................................ 4, 5

## INTRODUCTION

Defendant Creative Textile Mills PVT. LTD.'s ("Creative") motion to dismiss seeks dismissal on two grounds: (1) Plaintiffs' claims should be dismissed because they are insufficient to show that this Court has personal jurisdiction over Creative; and (2) Plaintiffs' common law claims should be dismissed for failure to state a claim. (*See generally*, ECF No. 81). As set forth fully below, Defendant's arguments are baseless and provide no viable basis for dismissal. The arguments misstate applicable personal jurisdiction law and relevant pleading standards. The allegations contained in Plaintiffs' First Amended Class Action Complaint ("AC") (ECF No. 34) should proceed, and Defendant's motion should be denied in its entirety.

Plaintiffs hereby incorporate the arguments made in their previously filed oppositions to Defendants TJX Companies, Inc.'s ("TJX") and AQ Textiles, LLC's ("AQ") motions to dismiss (ECF Nos.: 46 and 47).

## FACTUAL BACKGROUND

As alleged within the Amended Complaint, Defendants TJX, AQ, and Creative (collectively "Defendants") work in concert with one another to perpetrate a fraud on consumers throughout the United States. Defendants engage in the manufacturing, importing, marketing, and selling of bedding and textile products that contain misleading labeling regarding thread counts and corresponding quality, longevity, and fitness of the products. AC at ¶¶ 1, 3-5, 25-35, 39-40, 46-48, 51-52. Each Defendant profits from the illegal behavior. *Id*.

Creative, a private limited liability company organized under the laws of the Republic of India with its principal place of business in India, manufactures and sells textiles, including the sheets and bedding products at issue here, throughout the United States. *Id*. at ¶¶ 16-18. As part of a scheme to make its bedding and linen products more attractive, boost sales, and increase

1

profits, Creative knowingly labels its sheets with false thread counts and then exports them to AQ, who in turn supplies them to retailers like TJ Maxx, with all Defendants intending for consumers to see and rely upon the false labeling regarding thread counts. *Id*. at ¶¶ 14, 19, 39-45. According to Bloomberg.com, AQ is located in Greensboro, NC and "was founded in 2003. The company's line of business includes the wholesale distribution of home furnishings and houseware."[1] TJX is a national retailer with 25 stores located in Massachusetts.[2]

Creative admits that it and AQ share "a contractual relationship." ECF No. 82 at ¶ 9 (Declaration of Agarwal ("Agarwal Decl.")).[3] According to Creative's Supply Chain Summary from November 9, 2017 to November 9, 2018, Creative's "Top Importer" was AQ.[4] According to AQ's Supply Chain Summary from November 9, 2017 to November 9, 2018, AQ's "Top Supplier" was Creative.[5] An AQ bill of lading report dated December 6, 2018, as recorded by U.S. Customs, shows that AQ imported from Creative 2893 cartons of cotton woven bed sheets.[6] The listed "Consignee" for the shipment is "Aq Textiles Llc."[7]

"Thread count" represents the level of quality associated with a bedding or textile product to everyday consumers and is roughly analogous to the price point of the product. AC at ¶ 20.

---

[1] https://www.bloomberg.com/profiles/companies/0992578D:US-aq-textiles-llc
[2] TJX Store Locator, http://www.tjx.com/stores (last visited Dec. 17, 2018).
[3] On December 11, 2018, counsel for Plaintiffs asked counsel for Creative to provide information concerning the contractual relationship between AQ and Creative and explained the need to pursue jurisdictional discovery. Creative did not respond to Plaintiffs' inquiry with the requested information.
[4] Descartes Datamyne Trade Report, http://www.datamyne.com/supplier/6192388/creative-textile-mills-pvt-ltd (last visited Dec. 12, 2018).
[5] Descartes Datamyne Trade Report, http://www.datamyne.com/importer/6774638/aq-textiles-llc (last visited Dec. 12, 2018).
[6] Panjiva Shipping Information, https://panjiva.com/Aq-Textiles-LLC/32406626 (last visited Dec. 12, 2018).
[7] *Id*.

Consumers use thread count as an indicator of fabric quality and perceive products with higher thread counts as being softer and more comfortable. *Id*. at ¶¶ 1, 6, 20, 22. When thread counts are outright misrepresented, as is the case here, consumers like Elizabeth Adam and Rebecca Foley (together, "Plaintiffs") are misled into purchasing products that do not provide the expected levels of comfort, quality, and better sleep conditions.[8] *Id*. at ¶ 12.

Creative knew or should have known that the thread counts on the products were being inaccurately reported because the prices for the products it was selling were lower than authentic materials with the advertised thread counts and, most importantly, because the FTC had alerted the industry to this issue. *Id*. at ¶¶ 31-34, 49, 51, 92. Creative was aware of this perception by the public and knowingly and/or negligently misrepresented the thread counts of its products to increase sales and/or to increase sales prices. *Id*. at ¶ 21.

By improperly inflating thread counts contrary to industry standards, Creative has engaged in unconscionable, deceptive and fraudulent practices. *Id*. at ¶ 52. Creative's actions, taken in concert with its co-defendants, are aimed at inducing consumers into making purchases at inflated prices, without being aware they are buying a product that contains falsely advertised qualities. *Id*. Moreover, Plaintiffs and class members did not receive what Creative promised and warranted (i.e., sheets, bedding and other linen products of a certain thread count, quality and fitness for their intended use).

---

[8] The sheets that Plaintiffs purchased, which were manufactured by Creative, contained false thread counts: Plaintiff Adam's sheets, represented at 700 thread counts, were 245; Plaintiff Foley's sheets, represented at 800 thread counts, were 230. *Id*. at ¶¶ 12-13, 39-40. The sheets were not what Creative promised and warranted (i.e., sheets, bedding and other linen products of a certain thread count, quality and fitness for their intended use).

## ARGUMENT

**I.      Personal jurisdiction exists over Creative.**

In considering a motion to dismiss for lack of jurisdiction, the Court must take facts alleged by plaintiff as true and construe disputed facts favorably towards plaintiff. *See Ticketmaster–New York, Inc. v. Alioto*, 26 F.3d 201, 203 (1st Cir. 1994).

### A.      The Massachusetts long-arm statute authorizes jurisdiction over Creative.

The Massachusetts long-arm statute, Mass. Gen. Laws. ch. 223A, § 3, provides in relevant part that a court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's:

(b)      contracting to supply services or things in this commonwealth; … [or]

(d)      causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth …

Here, two separate subsections of the long-arm statute allow this Court to exercise jurisdiction over Creative.  As set forth in subsection (b), Creative contracted with AQ to manufacture bedding products which it knew would ultimately be supplied to consumers throughout the United States, including in the Commonwealth of Massachusetts.  *See* Agarwal Decl. ¶5 ("Creative sells its products to distributors and importers in the United States and Europe.").  TJX is a national retailer with 25 stores in Massachusetts alone[9] and markets, advertises and sells Creative's sheets and bedding products in its stores and through the internet throughout the United States and within the Commonwealth of Massachusetts.[10]  Creative sold its sheets with the intent to develop a national

---

[9] http://www.tjx.com/stores (last visited Dec. 17, 2018).

[10] The sheets purchased by Plaintiffs were and still are advertised by TJ Maxx on its website. https://tjmaxx.tjx.com/store/jump/product/home-home-bedding/1000-Cvc-4pc-Solid-Sateen-Sheet-Set/1000455045?colorId=NS1003583&pos=1:7&N=1780920131 (last visited Dec. 5, 2018),https://tjmaxx.tjx.com/store/jump/product/home-home-bedding/800tc-Cotton-Rich-

market and should have anticipated sales where AQ and TJX market and sell including in the TJ Maxx stores in the Commonwealth of Massachusetts. *Duarte v. Koki Holdings America, Ltd*., No. CV 19-11995-RGS, 2018 WL 6179511, at *3 (D. Mass. Nov. 27, 2018). Mr. Agarwal admits in his declaration that Creative and AQ enjoy a contractual relationship, and records show that Creative was AQ's top supplier.[11] Agarwal Decl. at ¶ 9. The listed "Consignee" for a recent Creative shipment was "Aq Textiles Llc."[12] *See Kernan v. Kurz-Holdings, Inc*., 175 F.3d 236, 242 (2d Cir. 1999) (finding that the manufacturer had knowledge that the distributor would "indeed attempt to serve … the market, even if it did so indirectly.").

Consistent with subsection (d), Creative caused tortious injury to Plaintiffs and other putative Class members by falsely labeling the sheets it manufactured, and Plaintiffs believe that Creative derived substantial revenue from those goods within the Commonwealth of Massachusetts where they were purchased by Plaintiffs. Plaintiffs paid a premium for the mislabeled sheets which were manufactured by Creative and sold by AQ and TJX in the Commonwealth of Massachusetts. This is enough to satisfy Massachusetts' long-arm statute. *See* Mass. Gen. Laws. ch. 223A, § 3(d). Nothing further is required.

At a minimum, further discovery as to this issue is warranted. *See Mullaly v. Sunrise Senior Living Mgmt., Inc.*, 224 F. Supp. 3d 117, 127 (D. Mass. 2016) (citing *Renner v. Lanard Toys, Ltd.*, 33 F.3d 277, 283 (3d Cir. 1994)) (permitting jurisdictional discovery where conflicting evidence gave rise to ambiguity of jurisdictional facts); *Celgard v. SK Innovation Co., Ltd.*, No.

---

Sateen-Sheet-Set/1000455058?colorId=NS2294282&pos=1:116&N=1780920131 (last visited Dec. 5, 2018).
[11] Descartes Datamyne Trade Report, http://www.datamyne.com/supplier/6192388/creative-textile-mills-pvt-ltd (last visited Dec. 12, 2018).
[12] *Id*.

3:13–CV–00254–MOC, 2013 WL 7088637, at *6 (W.D.N.C. Nov. 26, 2013) ("The jurisdictional

facts are disputed here, but should be easily clarified through limited discovery.")).

**B.     The exercise of jurisdiction over Creative comports with the Due Process Clause.**

The Court may also assert specific jurisdiction over Creative because Creative has the

requisite "minimum contacts with Massachusetts such that the maintenance of the suit does not

offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash.,*

*Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)

(internal quotation marks omitted)."

> The existence vel non of specific jurisdiction depends on the results of a tripartite inquiry.
> We evaluate: (1) whether the claim directly arise[s] out of, or relate[s] to, the defendant's
> forum state activities; (2) whether the defendant's in-state contacts represent a purposeful
> availment of the privilege of conducting activities in the forum state, thereby invoking the
> benefits and protections of that state's laws and making the defendant's involuntary
> presence before the state's courts foreseeable; and (3) whether the exercise of jurisdiction
> is reasonable.

*Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc.*, 825 F.3d 28, 35 (1st Cir. 2016)

(internal quotation marks and citations omitted).   Each requisite element is present in this case.

**1.     Relatedness.**

*First*, "[r]elatedness requires that the action ... directly arise out of the specific contacts

between the defendant and the forum state…   Relatively speaking, the relatedness inquiry is to be

resolved under a flexible, relaxed standard."   *Baskin-Robbins*, 825 F.3d at 35 (internal citations

and quotation marks omitted).   Relatedness "falls between proximate and 'but for' causation, with

foreseeability shaping most relatedness determinations." *Micheli v. Techtronic Indus.*, No. 11-

10503, 2012 WL 6087383, at *9 (D. Mass. Mar. 1, 2013) (citing *Nowak v. Tak How Invs., Ltd.*, 94

F.3d 708, 715–16 (1st Cir. 1996)); *Katz v. Spiniello Companies*, 244 F. Supp. 3d 237, 244 (D.

Mass. 2017) ("Though not precisely proximate cause, 'due process demands something like a "proximate cause" nexus.'" (quoting *Harlow*, 432 F.3d at 61)). The standard is "***not*** rigorous." *Access Now, Inc. v. Otter Products*, 280 F. Supp. 3d 287, 291 (D. Mass.  2017) (emphasis added).

Here, Creative exported the bedding products at issue to AQ, which distributed them to retailers such as TJ Maxx who then sold the products to Plaintiffs in the Commonwealth of Massachusetts.   The act of exporting the products was one of the first steps ultimately leading to Plaintiffs' purchase of the falsely advertised goods.   But for Creative's decision to falsely label and export the bedding, Plaintiffs would not have purchased the sheets in the Commonwealth of Massachusetts and as such would not have been harmed.   Thus, Creative's actions are related to the harm caused to the Plaintiffs in Massachusetts and the relatedness prong is, accordingly, satisfied.   *See, e.g.*, *Matos v. Seton Hall Univ.*, 102 F. Supp. 3d 375, 379-80 (D. Mass. 2015) (finding relatedness prong met when a student sued a university for discrimination at its New Jersey campus that arose out of recruiting materials and a scholarship offer sent to his Massachusetts home); *Sigros v. Walt Disney World Co.*, 129 F. Supp. 2d 56, 67 (D. Mass. 2001) (finding relatedness prong met because "Disney's solicitation in Massachusetts which led [the plaintiff] to make reservations at [the defendant's hotel] was not the proximate cause of [the plaintiff's] injury at [a restaurant on the resort's property], but it was reasonably foreseeable that advertising in Massachusetts for the Walt Disney World Resort would induce Massachusetts residents to make reservations at a Disney-owned hotel" and that they might subsequently eat at the restaurant).

### 2.    **Purposeful availment**.

*Next*, Creative has purposefully availed itself of the benefits and protection of Massachusetts' laws by placing its products into the stream of commerce and intentionally

targeting citizens of Massachusetts.   The United States Supreme Court instructs that the "placement of a product into the stream of commerce, without more" is insufficient. *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 112 (1987). "The main ingredients of purposeful availment are voluntariness and foreseeability.   Voluntariness requires that the defendant's contacts with the forum state proximately result from actions by the defendant *himself*."   *Baskin-Robbins*, 825 F.3d at 36 (internal citations and quotation marks omitted).   "When a defendant challenges the sufficiency of the plaintiff's allegations of facts, the Court must 'draw all reasonable inferences from [the plaintiff's well-pleaded factual allegations] in her favor.'" *Grice v. VIM Holdings Grp., LLC*, 280 F. Supp. 3d 258, 273 (D. Mass. 2017) (quoting *Valentin v. Hosp. Bella Vista*, 254 F.3d 358, 363 (1st Cir. 2001)). This Court has previously held that "selling finished products to national retailers" will meet the "plus something more" requirement. *Hilsinger Co. v. Fbw Invs.*, 109 F. Supp. 3d 409, 425 (D. Mass. 2015). This is essentially what Creative has done in the instant case.

This Court's analysis in *Hilsinger* was particularly instructive and thorough. In *Hilsinger*, the Court wisely pointed out that a distinction exists between placing *finished* products into the stream of commerce versus selling parts that were later incorporated by another manufacturer. *Id*. at 426 (citing *J. McIntyre Mach., Ltd. v. Nicastro*, 131 S. Ct. 2780, 2794 (2011)). The rationale was simple: "[a] corporation cannot sell its products to national retailers such as RadioShack, Best Buy, Target, and Wal-Mart and then claim that it is surprised to be haled into court in a particular State." *Hilsinger*, 109 F. Supp. 3d at 428 (quoting *Kernius v. Int'l Elecs., Inc.*, 433 F. Supp. 2d 621, 627 (D. Md. 2006)); *UTC Fire & Sec. Am. Corp. v. NCS Power, Inc*., 844 F. Supp. 2d 366, 375 (S.D.N.Y. 2012) (Defendant "did so with the expectation – indeed, the hope – that they would be sold to customers in markets throughout the United States.").

Creative purposefully availed itself of the privilege of conducting business in the Commonwealth of Massachusetts by manufacturing and shipping thousands of pounds of cotton sheets labeled with false thread counts into the Port of Charleston and into the waiting arms of its "contractual" customer AQ, a distributor that marketed and sold the sheets along with TJX to customers nationwide, including in Massachusetts.[13] In addition, TJ Maxx advertised and marketed the Creative sheets and bedding products on the internet throughout the United States and to residents of the Commonwealth of Massachusetts.[14] This conduct demonstrates that Creative intended to serve consumers in Massachusetts. *See Asahi Metal Indus.*, 480 U.S. at 112 ("[D]esigning the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State" may show an intent or purpose to serve the forum state); *Hilsinger*, 109 F. Supp. 3d at 428 ("[Defendant] intends for its product to be sold wherever Walmart and Sears have stores and wherever Amazon.com sells to consumers—including Massachusetts."); *Liu v. DeFelice*, 6 F. Supp. 2d 106 (D. Mass. 1998) (claim for invasion of privacy by Massachusetts resident against New York investigator after he accessed her confidential credit information online from his New York office in violation of Fair Credit Reporting Act; defendant's actions did not literally occur

---

[13] TJX verified in its motion to dismiss, and accompanying declaration, that the sheets the Plaintiffs purchased (i.e., Adam bought Sterling Manor; and Foley bought Ultra Lux), were "branded with" AQ's "trademark." *See* TJX's motion to dismiss, ECF No. 38 at p. 2; ECF No. 39 (Declaration of Sofis ("Sofis Decl.") at ¶¶ 2, 4 and Exhibits A and C (showing the United States Patent and Trademark Office registrations)).

[14] https://tjmaxx.tjx.com/store/jump/product/home-home-bedding/1000-Cvc-4pc-Solid-Sateen-Sheet-Set/1000455045?colorId=NS1003583&pos=1:7&N=1780920131 (last visited Dec. 5, 2018),https://tjmaxx.tjx.com/store/jump/product/home-home-bedding/800tc-Cotton-Rich-Sateen-Sheet-Set/1000455058?colorId=NS2294282&pos=1:116&N=1780920131 (last visited Dec. 5, 2018).

within Massachusetts, but he must have understood that he was directing his acts toward Massachusetts and knew that his acts would be felt by plaintiff in Massachusetts); *Systemation, Inc. v. Engel Industries, Inc.*, 992 F. Supp. 58 (D. Mass. 1997) (plaintiff made prima facie case of personal jurisdiction for patent infringement claim against defendant that sold products in forum state through local distributor).  Creative did more than simply launch its products into the stream of commerce: it purposefully set them on a sure course to retailers in Massachusetts. *See Hilsinger*, 109 F. Supp. 3d at 428  (finding purposeful availment where, among other things, the defendant "intend[ed] for its product to be sold wherever Walmart and Sears have stores and wherever Amazon.com sells to consumers – including Massachusetts"); *California Brewing Co. v. 3 Daughters Brewing LLC*, No. 215CV02278KJMCMK, 2016 WL 1573399, at *5 (E.D. Cal. Apr. 19, 2016) (where there "is evidence defendants sold their goods to national retailers with the intent to develop a national market, … it would not be reasonable for defendants to disclaim any connection to sales in California").

### 3.    Fair and reasonable.

*Finally*, the exercise of jurisdiction must be fair and reasonable.  The "Gestalt factors" which must be considered by the Court in making this assessment consist of the following:  "(1) the defendant's burden of appearing [in the forum state], (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies." *Baskin-Robbins*, 825 F.3d at 36 (citations omitted).  The court's "appraisal of these factors operates on a sliding scale: the weaker the plaintiff's showing on the first two prongs (relatedness and purposeful

availment), the less a defendant need show in terms of unreasonableness to defeat jurisdiction." *Id.* (internal quotation marks omitted).

"It is presumptively not unreasonable for a Court to assert personal jurisdiction over a defendant once it has been established that the claim arises out of the forum-based conduct and the defendant purposefully availed itself of the laws of the forum state.  The defendant bears the burden of proof to show unfairness." *Grice v. VIM Holdings Grp., LLC*, 280 F. Supp. 3d 258, 274 (D. Mass. 2017) (citation and internal quotation marks omitted).

Creative has not established the "kind of special or unusual burden" which would justify a finding that adjudicating the case in the District of Massachusetts would be unduly burdensome. *Hannon v. Beard*, 524 F.3d 275, 285 (1st Cir. 2008) (quoting *Pritzker v. Yari*, 42 F.3d 53, 64 (1st Cir. 1994)).  Creative has substantial means and the fact that its representatives might have to travel internationally does not establish a special or unusual burden.  *See, e.g.*, *Moura v. New Prime, Inc.*, No. CV 4:17-40166-TSH, 2018 WL 4907528, at \*6 (D. Mass. Oct. 9, 2018) (burden on foreign defendant not unusual compared to other foreign defendants); *C.W. Downer & Co. v. Bioriginal Food & Sci. Corp.*, 771 F.3d 59, 70 (1st Cir. 2014) ("[M]ounting an out-of-state defense most always means added trouble and cost, … and modern travel creates no especially ponderous burden for business travelers"); *BlueTarp Fin., Inc. v. Matrix Constr. Co.*, 709 F.3d 72, 83 (1st Cir. 2013) (no unusual burden by virtue of being required to mount an out-of-state defense); *see also Pritzker*, 42 F.3d at 64 (noting that modern travel "creates no especially ponderous burden for business").  Moreover, despite the claim of burden and hardship Creative has defended other lawsuits filed

against it in the United States in relation to its sheets and bedding products, including patent infringement and false labeling actions.[15]

Second, "Massachusetts has an interest in adjudicating this dispute because it has an interest in affording Plaintiffs, who reside in Massachusetts, a convenient forum in which to litigate this dispute." *Baskin-Robbins*, 825 F.3d 28, 36 (citations omitted); *Moura v. New Prime, Inc.*, No. CV 4:17-40166-TSH, 2018 WL 4907528, at *6 (D. Mass. Oct. 9, 2018) (Massachusetts had interest in keeping citizens safe from defendant's actions notwithstanding that accident at issue did not take place in Massachusetts); *Burger King v. Rudzewicz*, 471 U.S. 462, 473 (1985) (a "state generally has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors"). Also, "plaintiff's choice of forum must be accorded a degree of deference. This is obviously the most convenient forum for plaintiff[s]." *Hilsinger*, 109 F. Supp. 3d at 430 (citing *Nowak v. Tak How Invs., Ltd.*, 94 F.3d 708, 718 (1st Cir. 1996)).

The fourth and fifth factors likewise weigh in favor of a finding of specific jurisdiction. The District Court's interest in preventing a non-citizen defendant from making false representations to its citizens is significant and "the most efficient path for the judicial system…is to move forward with the lawsuit in the present forum." *Edvisors Network, Inc. v. Educ. Advisors, Inc.*, 755 F. Supp. 2d 272, 285 (D. Mass. 2010) (citations omitted). The Commonwealth has an interest in preventing corporations from reaching into the forum and then exposing them to subsequent harm; an Indian court has no such interest. *Moura v. New Prime, Inc.*, No. CV 4:17-40166-TSH, 2018 WL 4907528, at *7 (D. Mass. Oct. 9, 2018) (citing *Nowak*, 94 3d at 719

---

[15] https://s3.amazonaws.com/public-inspection.federalregister.gov/2017-05845.pdf, https://insight.rpxcorp.com/litigation_documents/11530149. (last reviewed December 6, 2018),https://dlbjbjzgnk95t.cloudfront.net/0710000/710342/1037742-566452.pdf (last reviewed December 6, 2018).

("Massachusetts has an interest in protecting its citizens from out-of-state providers of goods and services as well as affording its citizens a convenient forum in which to bring their claim.")). Indeed, "[n]othing in the record suggests that this case involves any unique social or policy issues of concern to Massachusetts or any other state" save for the fact that Massachusetts has an interest in protecting its citizens, thus, this factor is either neutral or leans towards Massachusetts. *Edvisors Network*, 755 F. Supp. 2d at 285.

In sum, balancing these factors, the exercise of jurisdiction in Massachusetts will not offend notions of fair play and justice. If this Court finds otherwise, then leave to amend should be granted. *Blu Homes, Inc. v. Kaufmann*, CIV.A. 10-11418-DJC, 2011 WL 3290362, at *11 (D. Mass. July 29, 2011) ("Amendments should be liberally permitted"). Alternatively, the Court should allow for a limited amount of jurisdictional discovery to take place. *Sunview Condo. Ass'n v. Flexel Int'l*, 116 F.3d 962, 964 (1st Cir. 1997) (Plaintiffs may be "entitled to a modicum of jurisdictional discovery if the corporation interposes a jurisdictional defense."); *accord Surpitski v. Hughes-Keenan Corp.*, 362 F.2d 254, 254 (1st Cir. 1966) (A "stranger to a corporation should not be required…to try the issue of jurisdiction on affidavits without the benefit of full discovery.").

## II.    Plaintiffs' claims should not be dismissed under Rule 12(b)(6).

A motion to dismiss for "failure to state a claim upon which relief can be granted" under Fed. R. Civ. P. 12(b)(6) only requires the court to conduct a limited inquiry, focusing not on "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).  When considering a motion to dismiss under Rule 12(b)(6), the court "must assume the truth of all well-plead facts and give the plaintiff[s] the benefit of all reasonable inferences therefrom." *Alvarado Aguilera v. Negrón*, 509

F.3d 50, 52 (1st Cir. 2007) (quoting *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007). The factual allegations need only be enough to "nudge[] their claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The court's inquiry is limited to the content of the complaint, matters of public record, orders, and exhibits attached to the complaint. *See Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). The facts must be read in light most favorable to plaintiff. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1940 (2009). Plaintiffs' complaint, as required, alleges clear factual statements that give rise to a plausible claim for recovery against the defendant. *Bell Atlantic v. Twombly*, 550 U.S. 554, 556 (2007). Determining whether a complaint states a plausible claim is context-specific, requiring the reviewing Court to draw on its experience and common sense. *Id.* at 556.

Instead of responding in opposition to Plaintiffs' MMWA, implied warranty, warranty, negligence, negligent misrepresentation, and MCPA counts, Defendant seeks to incorporate by reference arguments contained in AQ's motion to dismiss. *See* Creative Motion to Dismiss at p. 14. Defendant did not respond or incorporate by reference any opposition to Plaintiffs' claims for express warranty and fraud. As a result, it has waived any opposition and/or defenses to those two claims. For efficiency purposes and because the allegations and law are congruent, Plaintiffs incorporate by reference their oppositions to the motions to dismiss of TJX and AQ (ECF Nos.: 46 and 47) which are pending before this Court. In sum, those oppositions factually and legally demonstrate that Defendants' motions are legally infirm.

## CONCLUSION

Wherefore, for the reasons set forth above, Defendant Creative Textile Mills PVT. LTD.'s motion to dismiss should be denied.

Dated: January 7, 2019                    MIRABELLA LAW LLC

                                 By:    */s/Erica Mirabella*                    
                                        Erica Mirabella
                                        MIRABELLA LAW LLC
                                        132 Boylston St., 5th Floor
                                        Boston, MA 02116
                                        Telephone: (617) 580-8270
                                        Facsimile: (617) 583-1905
                                        erica@mirabellallc.com

                                        Charles LaDuca
                                        David Black
                                        Brendan Thompson
                                        CUNEO GILBERT & LADUCA, LLP
                                        4725 Wisconsin Avenue, NW, Suite 200
                                        Washington, DC  20016
                                        Telephone: (202) 789-3960
                                        Facsimile: (202) 789-1813
                                        charles@cuneolaw.com
                                        dblack@cuneolaw.com

                                        Charles E. Schaffer
                                        LEVIN SEDRAN & BERMAN
                                        510 Walnut Street, Suite 500
                                        Philadelphia, PA 19106
                                        Telephone: (215) 592-1500
                                        Facsimile: (215) 592-4663
                                        cschaffer@lfsblaw.com

                                        Michael McShane
                                        Clinton Woods
                                        AUDET & PARTNERS, LLP
                                        771 Van Ness Avenue, Suite 500
                                        San Francisco, CA  94102
                                        Telephone: (415) 568-2555
                                        Facsimile: (415) 568-2556
                                        mmcshane@audetlaw.com
                                        cwoods@audetlaw.com

                                        *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I, Erica Mirabella, hereby certify that this foregoing document has been electronically filed via the Court's CM/ECF system and is available for viewing and downloading from the Electronic Case Filing ("ECF") System.  Notice has been sent through the ECF System to all counsel of record.

Dated: January 7, 2019                                         */s/Erica Mirabella*
                                                                              Erica Mirabella