## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ELIZABETH ADAM AND REBECCA FOLEY, individually and on behalf of all others similarly situated, | |
| Plaintiffs, | Case No.: 1:17-cv-11260-MLW |
| v. | |
| THE TJX COMPANIES, INC., | |
| Defendant. | |

### SECOND AMENDED CLASS ACTION COMPLAINT

Plaintiffs Elizabeth Adam and Rebecca Foley ("Plaintiffs") bring this action against Defendant The TJX Companies, Inc.'s ("TJX" or "Defendant") on their behalf and on behalf of a Class consisting of all others similarly situated.

### INTRODUCTION

1.     This action seeks to redress TJX's deceptive acts and unconscionable business practices designed to deceive and mislead consumers into believing that TJX's bed sheets products had higher thread counts than they actually had and as such were of better quality, more durable, longer-lasting, softer and more comfortable for sleeping than products with lesser thread counts. TJX priced its sheet products to reflect the higher quality, durability, longevity, softness and comfort associated with higher thread counts, and Plaintiffs and all others similarly situated paid that price believing that the products were of the represented thread count and associated quality and characteristics. In purchasing sheet products, Plaintiffs and the Class received less than what was promised by TJX due to the improperly inflated thread counts represented on sheets sold by TJX in its retail stores.

2.      TJX knew or should have known that members of the bed sheet industry consistently communicate to consumers that higher thread count sheets are of better quality, more durable, longer lasting, softer, and more comfortable for sleeping. As a result, consumers purchasing sheet products use thread count as a primary indicator of the quality, durability, longevity, softness and comfort of the sheets offered for sale, and pay higher prices for higher thread count sheets.

3.      TJX sought to make the sheets more attractive to consumers, boost TJX's sales, and increase its profits.  In doing so, TJX sold sheet products which departed from well-established and long-standing industry standards governing the calculation and advertisement of thread counts and inflated the thread counts on the labels of the products TJX marketed, distributed, and/or sold during the relevant time period.

4.      On February 16, 2018, the Texas Department of Agriculture ("TDA") sent a letter to TJX's Executive Vice President, Secretary, and General Counsel, Ms. Ann McCauley (office is located in Framingham, Massachusetts) explaining that it, in November 2017, based on a thread count complaint it received concerning TJX's Ultra Lux 800 thread count sheets, had the sheets tested by Vartest (New York, NY quality assurance and compliance textile testing lab) who determined that the Ultra Lux 800 thread count sheets had an actual thread count of 293 (not 800).[1] Letter from Texas Department of Agriculture to Ms. Ann McCauley, Executive Vice President, Secretary and General Counsel, The TJX Companies, Inc., Mr. Talat Mahmood, Director, AQ Textiles LLC, AQ Textiles, LLC, and Creative Textiles Mills PVT. LTD, pp. 1-5

---

[1]  On information and belief, all of the sheets sold by TJX and manufactured by AQ Textiles overstated the thread count of bed sheets on the product's packaging and labeling prior to 2017.

("TDA Letter") (Exhibit A, February 16, 2018, Letter from the Texas Department of Agriculture).

5.      Based on the 2017 Vartest lab test results, the TDA requested that the Office of the Attorney General, State of Texas, Consumer Protection Division, and the United States Federal Trade Commission "investigate the matters" as TJX may have engaged in deceptive trade acts as follows:

      1.      Advertising the Goods as having a thread count of 800, when in fact, according to the test results shown in Attachment B, the Goods have a thread count of 293, which constitutes a materially false, misleading or deceptive practice.

      2.      Representing the Goods have characteristics which they do not have.

      3.      Representing that Goods are of a particular standard, when they are of another.

      4.      Failing to disclose information concerning Goods which was known at the time of the consumer's purchase when such failure to disclose information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information that the thread count was incorrect been disclosed.  *Id.*

6.      TJX's Ultra Lux 800 Thread Count sheets, which were lab tested at the request of the TDA in 2017, and which were subject to the requested Texas investigation, are the same brand of sheets purchased by Named Plaintiff Rebecca Foley (purchased in 2017 Ultra Lux sheets). *Id*.

7.      The TDA sent the 2017 lab test results and complaint information concerning the Ultra Lux 800 sheets to the Federal Trade Commission on February 16, 2018.  Based on the materials it received from the TDA, the Federal Trade Commission stated in its Consumer Sentinel Network Complaint system the following (February 26, 2018, Federal Trade

Commission Consumer Sentinel Network Complaint report (received by Plaintiffs by-way-of a

FOIA request)):

> Consumer adds company name The TJX Companies, Inc. to the complaint and
> states this and other previously reported manufactures are distributing bed sheets
> known as Ultra Lux 800 Thread Count. Consumer states their testing has shown the
> count is actually 293 and using materially false advertising practices to represent
> goods they do not have and do not meet the standard promised. Consumer reports
> the companies failed to disclose information to consumer's at the time of purchase
> that may have impacted their decision.

8.      On information and belief, the sheet products sold by TJX were manufactured by

AQ Textiles at the request and upon the order of TJX for sale at TJX retail stores during the

relevant time period.

9.      TJX's sheet products misrepresented, and continue to misrepresent, the thread

count in many of the sheet products it marketed and sold throughout the country, resulting in the

sale of sheet products represented to have greater than their true thread counts to consumers

throughout the Commonwealth of Massachusetts and the United States. The representation of the

false and misleading thread count also deceives and misleads consumers into believing that they

are purchasing a product which is of higher quality, durability, longevity, softness and better for

sleeping than products with a lower thread count.

10.      Inaccurate thread counts create reasonable but mistaken beliefs by consumers

about the quality, durability, longevity and comfort of sheets. For example, reasonable

consumers believe that a sheet package label stating that it contains an 800 thread-count sheet

actually contains sheets with a thread count calculated at 800 according to a recognized and

established industry standard. Likewise, consumers believe that an 800 thread-count sheet is of

higher quality, durability, longevity, softer and better for sleeping than a lower thread-count

sheet. Consumers rely on TJX's representations, advertising, and pricing as they compare and assess products and make purchase decisions.

11.     As a direct result of TJX's improper, deceptive, and unconscionable scheme to misrepresent sheet thread counts, Plaintiffs and other Class members suffered damages because the inflated thread counts induced Plaintiffs and other members of the Class to purchase the products when Plaintiffs and other members of the Class would not have purchased them, or would only have paid a lower price for the products if they had known the actual thread counts at the time of purchase.

**JURISDICTION AND VENUE**

12.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and defendant are citizens of different states. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

13.     Venue is proper in this district pursuant to 28 U.S.C. § 1391, because TJX conducts business in this District and has intentionally availed itself to the laws and markets of this District, and a substantial part of the events or omissions giving rise to the claims occurred in this District.

14.     TJX's improper conduct set forth herein occurred in this District or was conceived of and executed from this District in whole or in part. TJX's decisions to engage in the improper conduct set forth herein were made in this District. Some of the sheets at issue were advertised, marketed, sold and/or distributed by TJX, or its operating entities, in this district. TJX or its

operating entities directly advertised, marketed and sold sheet products to consumers in this District.

15.     The harm alleged herein occurred in this District, or emanated from TJX's improper conduct that occurred in this District, in whole or in part.

**PARTIES**

16.     Plaintiff Elizabeth Adam is an adult citizen of the Commonwealth of Massachusetts. In May 2017, Ms. Adam purchased a Sterling Manor Luxury Sateen Weave, queen-size sheet set, manufactured by Creative Textiles and represented to be "700 Thread Count" from Defendant TJX's T.J. Maxx retail store located at 350 Washington Street, Boston, Massachusetts 02109. *See* Exhibit B (showing sheets purchased and label on sheets and TJX price tag).  Plaintiff Adam relied on the thread count representations on the packaging when purchasing these sheets and believed that she was purchasing sheets with a 700 thread count and that the sheets were of higher quality, softer, and better for sleeping than sheets with lower thread counts. Plaintiff Adam paid $29.99 plus tax for this sheet set.

17.     Plaintiff Rebecca Foley is an adult citizen of the Commonwealth of Massachusetts. In May 2017, Ms. Foley purchased an Ultra Lux 6 Piece queen-size sheet set, manufactured by Creative Textiles and represented to be "800 Thread Count" from Defendant TJX's T.J. Maxx / HomeGoods retail store located at 100 Cambridgeside Place, Cambridge, Massachusetts 02141. *See* Exhibit C (label on sheets purchased by Plaintiff Foley). Plaintiff Foley relied on the thread count representations on the packaging when purchasing these sheets and believed that she was purchasing sheets with an 800 thread count and that the sheets were of

higher quality, softer, and better for sleeping than sheets with lower thread counts. Plaintiff

Adam paid $39.99 plus tax ($42.49 with tax) for this sheet set.

18.      Defendant TJX is a is a Delaware corporation, with its principal executive offices

located at 770 Cochituae Road, Framingham, Massachusetts 01701. TJX has "more than 4,500

stores in nine countries, four e-commerce sites."[2] TJX operates T.J. Maxx and Marshalls

(combined, Marmaxx), HomeGoods, Sierra, and Homesense, as well as tjmaxx.com,

Marshalls.com, and sierra.com, in the U.S."[3] "As of February 1, 2020 (the end of the fiscal year),

TJX's annual sales were nearly $42 billion."[4]  TJX has sold and/or sells sheet products

manufactured by Creative Textiles Mills PVT. LTD and imported and distributed by AQ

Textiles, LLC.

## FACTUAL ALLEGATIONS

19.      For consumers purchasing sheets and pillowcases, thread count is used as an

indicator of fabric quality, durability, longevity and a basis on which they make purchasing

decisions. As the thread count increases, so does the price that consumers are willing to pay for

sheets.

20.      Retailers who sell sheet products, including TJX, know, or should know,  that

consumers will pay a higher price for sheet products with a higher thread count.  As such, retailers

increase the price of products to correspond with a thread count increase.

21.      Consumers rely on represented thread count as the gauge for the quality of their

sheet products. *See* ABC News, *Are Shoppers Short-Sheeted by Thread Count?*, Jan. 2006,

---

[2]      https://www.tjx.com/company/ (last visited May 10, 2020).
[3]      *Id*.
[4]      https://www.tjx.com/company/history (last visited May 10, 2020).

https://abcnews.go.com/GMA/story?id=125380&page=1 (noting that customers "rely" on thread count as an important factor while shopping.).

22.     Consumers pay more for higher thread count sheets. *Id.* ("A single-ply 300-count can run about $55 a set, while the 600 thread-count sheet … is $180 a set. Consumers are paying a lot more for less quality").

23.     An informal survey of the prices of cotton king-size sheet sets at online retailers in December 2016 showed that as thread count increased, so did the price for the sheets.



24.     The common or standard practice in the United States bedding industry has been to count the number of threads in both the warp (vertical direction) and filling (horizontal direction). Common or standard practice counts each yarn as one thread, regardless of whether the yarn was a single-ply or multi-ply yarn.

25.     The American Society for Testing and Materials' ("ASTM") Standard Test Method for Warp (End) Count and Filling (Pick) Count of Woven Fabric, Designation: D3775-12, covers the standard test method for measuring warp end count and filling pick count and is applicable to all types of woven fabric. Section 9.1.1 of D3775-12 instructs on the appropriate method for determining thread count: "Count individual warp ends and filling picks as single units regardless of whether they are comprised of single or plied components."

26.     The terms relevant to ASTM D3775-12, and related to textiles, are defined by ASTM Designation: D123-03. *See* Section 3, Terminology of ASTM D3775-123. These terms, among others, include:

     a. **count**, n–in woven textiles, the number of warp yarns (ends) and filling yarns (picks) per unit distance as counted while the fabric is held under zero tension, and is free of folds and wrinkles.

     b. **end**, n–in fabric, an individual warp yarn (single or ply) or cord.

     c. **filling**, n–yarn running from selvage to selvage at right angles to the warp in a woven fabric.

     d. **pick**, n–an individual filling yarn.

     e. **pick count**, n–in woven fabrics, the number of filling yarns per unit fabric length.

Source: ASTM D 123-03, Standard Terminology Relating to Textiles.

27.     The prior versions of ASTM D3775, going back at least to 2003, included the same instructions for proper counting under the standard. ASTM, Standard Test Method for Warp End Count and Filling Pick Count of Woven Fabric, Designation: D3775-03a, Section

9.1.4 instructs, "Count individual warp yarns (ends) and filling yarns (picks) as single units regardless of whether they are comprised of single or plied components."

28.     Per ASTM D3775-12 § 9.1.4, the standard deviation of the samples tested should be 5% or less. In other words, the stated thread count should be within 5% of the actual thread count.

29.     However, some sheet manufacturers and retailers, such as TJX, are not adhering to the standard-based, traditional, and common industry practice. These manufacturers and retailers double or triple (or more) the true thread count by counting plied yarns individually.

30.     According to the National Textiles Association ("NTA") and the Federal Trade Commission ("FTC"), this practice of determining thread count by counting plies in plied yarns individually "inflates the thread count numbers to levels which double or triple (or more) the thread count as determined by the long standing, traditional way. This practice has also created confusion in the marketplace and has caused consumers to compare thread counts that may have been calculated in two dramatically different ways." *See* FTC Letter to National Textile Association, August 2, 2005, Exhibit D.

31.     In its August 2005 Letter to the National Textile Association, the FTC stated that:

> [C]onsumers could be deceived or misled by the practice of stating an inflated thread count, achieved by multiplying the actual count by the number of plies within the yarn. A possible non-deceptive way to disclose both the thread count and the yarn ply would be to state, for example: '300 thread count, 2 ply yarn.' A representation of '600 thread count' for this same product would likely mislead consumers about the quality of the product being purchased."

32.     The practice of counting the plies that make up each thread was also condemned by the American Textile Manufacturer's Institute ("ATMI"). In a letter sent to the FTC on

January 31, 2002, Exhibit E, ATMI addressed marketing of bed sheets and pillowcases to

consumers with claims of extremely high yarn or thread count claims, stating that:

> Labeling these products based on a count that includes each ply in plied yarns deceives the customer into believing that bedding products with higher counts are better, when, in fact, they might be inferior because of the method used to determine the count.
>
> …
>
> In many cases, these extremely high counts are achieved by counting yarns within a ply as individual yarns, thus dramatically increasing the number of yarns in a square inch of fabric. A plied yarn is one in which two or more yarns are twisted together to form a single strand.
>
> ATMI believes this method of labeling products based on counting each individual yarn in plies to be a deceptive practice, which misleads the American public into making purchasing decisions to purchase items, based on false and misleading information.
>
> ASTM method D 3775-96 (Standard Test Method for Fabric Count of Woven Fabric) [a prior version of D3775-12] the long-accepted industry standard for determining count. This method has been in use in this country for many years and serves as the industry's standard way to report the count of many woven textile fabrics, including sheeting. It is based on the number of yarns in the warp direction and filling direction, regardless of ply, and has become an important parameter used by consumers to judge the quality of sheeting products, since the higher the count, the more luxurious the product.
>
> ATMI believes that any information provided to the consumer should be true and correct so as not to be deceptive or misleading. We believe that plied yarns are properly counted as only one yarn. For example, a fabric containing 250 individual four ply yarns in a square inch would be described as a "250 thread count fabric, even though each thread or yarn contained four plies twisted together." It would be false and misleading to describe this as a 1000 thread count product.

33.     The FTC's reply letter to ATMI dated March 18, 2002, advised how the

Commission's staff would analyze claims that counting yarns within a ply as individual yarns to

determine thread count was a deceptive practice.  Exhibit F. The FTC advised that where ASTM

standards existed, the Commission would give great weight to the applicable standards to

determine if product claims were reasonable or deceptive:

> A thread count claim, like other objective, material claims about a product, must be supported by a "reasonable basis." In determining what constitutes a reasonable basis for claims, we would consider what experts in the field believe is appropriate, including whether there are relevant consensus-based test procedures, such as an ASTM test procedure, or other widely accepted industry practices that apply to the matter. If so, we would give such procedure or practices great weight in determining whether the advertiser has met its substantiation burden. In other related context, the Commission has encouraged the use of ASTM tests. See Press Release, FTC Announces Actions on Wool Labeling Rules, dated March 8, 1994 (copy attached) ("In its clarification of the procedure used for testing the fiber content of wool products, the FTC said the industry members should, where possible, use procedures established by the American Society for Testing and Materials (ASTM).").

34.    Despite these long-standing industry standards for calculating thread counts, and

the likelihood that deviating from the standards would mislead and deceive consumers, TJX, an

industry leader in textile sales, marketed, advertised, and sold sheet products with inflated thread

counts.

35.    On the label of sheet products sold in TJX's stores, TJX represented that sheet

products were of a certain thread count, but when measured in accordance with industry

standards, these thread counts were far less than claimed.

36.    TJX knew or should have known that the labeling for the sheets improperly

counted the plies making up the threads in the sheets rather than the threads themselves.

37.    On February 16, 2018, the Texas Department of Agriculture ("TDA") sent a letter

to TJX's Executive Vice President, Secretary, and General Counsel, Ms. Ann McCauley (office

is located in Framingham, Massachusetts), explaining that it, on November 28, 2017, based on a

thread count related complaint it had received concerning TJX's Ultra Lux 800 thread count

sheets, had the sheets tested by Vartest (New York, NY quality assurance and compliance textile

testing lab) who determined that the Ultra Lux 800 thread count sheets had an actual thread count

of 293 (not 800).  TDA Letter at pp. 1-5 (Exhibit A, February 16, 2018).

38.     Based on the lab test and complaint, the TDA requested that the Office of the

Attorney General, State of Texas, Consumer Protection Division, and the United States Federal

Trade Commission "investigate the matters" as TJX may have engaged in deceptive trade acts

as follows:

1.  Advertising the Goods as having a thread count of 800,
    when in fact, according to the test results shown in
    Attachment B, the Goods have a thread count of 293, which
    constitutes a materially false, misleading or deceptive
    practice.

2.  Representing the Goods have characteristics which they do
    not have.

3.  Representing that Goods are of a particular standard, when
    they are of another.

4.  Failing to disclose information concerning Goods which was
    known at the time of the consumer's purchase when such
    failure to disclose information was intended to induce the
    consumer into a transaction into which the consumer would
    not have entered had the information that the thread count
    was incorrect been disclosed.  *Id*.

39.     The November 28, 2017 Vartest lab report, which is signed by Technical Director

Adam Varley, commented "Assumes 2 picks weaving as 1. Ends are spun. Picks are filament.

Filling yarn is partially separable." *Id*. at p. 5.

40.     The TDA Letter also stated that the "TDA urges you, in order to mitigate possible

damage occurring to consumers purchasing the Goods mentioned herein, to stop sales of said

Goods, or to correctly repackage said Goods to reflect the proper characteristics of said Goods."

*Id*. at p. 2.

41.     On February 18, 2018, the TDA sent the 2017 lab test results and the complaint

information concerning the Ultra Lux 800 sheets to the Federal Trade Commission.  Based on

the materials it received from the TDA, the Commission documented in its Consumer Sentinel

Network Complaint system the following (date of entry: February 26, 2018, Federal Trade

Commission Consumer Sentinel Network Complaint report (received by Plaintiffs via FOIA

request)):

> Consumer adds company name The TJX Companies, Inc. to the complaint and
> states this and other previously reported manufactures are distributing bed sheets
> known as Ultra Lux 800 Thread Count. Consumer states their testing has shown the
> count is actually 293 and using materially false advertising practices to represent
> goods they do not have and do not meet the standard promised. Consumer reports
> the companies failed to disclose information to consumer's at the time of purchase
> that may have impacted their decision.

42.     Named Plaintiff Foley bought her Ultra Lux 800 Thread Count sheets in 2017, the

same year that the Texas Department of Agriculture had the same sheets lab tested (Ultra Lux

800 Thread Count sheets). Photos of Ms. Foley's Ultra Lux 800 sheets and the Ultra Lux 800

sheets tested by the Texas Department of Agriculture are here (same packaging labels):

Ultra Lux 800 sheets purchased by Named Plaintiff Foley at T.J. Maxx in 2017 (Exhibit C):



Ultra Lux 800 Sheets purchased at T.J. Maxx tested by Vartest lab for the Texas Departement of
Agriculture in 2017 (TDA Letter at p. 5 (Exhibit A)):



43.     Plaintiff Foley purchased an Ultra Lux brand sheet set, which was represented to be "800 Thread Count," from TJX's retail store located at 100 Cambridgeside Place, Cambridge, MA 02141. However, the thread count of those sheets was **230 not 800**. The Texas Department of Agriculture's November 2017 Vartest test result, for the exact same Ultra Lux 800 Thread Count sheets (sold at a T.J. Maxx store), was determined to be **293 not 800**. The TDA's testing confirms Plaintiffs' testing (both tests show that the actual thread count, according to the ASTM D3775, is more than 50% less than represented) as reflected here:

| TJX Ultra Lux 800 Thread Count Sheets Tested | TJX Thread Count Label Representation | Lab Test Result |
|---|---|---|
| Plaintiff Foley's Ultra Lux 800 Thread Count sheets purchased in 2017 at T.J. Maxx and tested by Plaintiffs | **800** | **230** |
| Texas Department of Agriculture Ultra Lux 800 Thread Count sheets purchased in 2017 at T.J. Maxx and tested by Vartest (TDA Letter, p. 5 | **800** | **293** |

44.     Plaintiff Adam purchased a Sterling Manor Luxury Sateen Weave brand sheet set which was represented to be "700 Thread Count," from TJX's retail store located at 350

Washington Street, Boston, Massachusetts. However, the true thread count of those sheets was

**245 not 700.**

      45.     On information and belief, other sheets that were sold by TJX at its retails stores

also have false and over inflated thread counts. For example:

        a.    Somerset-Luxury Sateen sheets sold by TJX were represented to be 900
             Thread Count. However, when measured in accordance with industry
             standards, these sheets actually had a 249 Thread Count.

        b.    Other Ultra Lux sheets sold by TJX were represented to be 1200 Thread
             Count. However, when measured in accordance with industry standards,
             these sheets actually had a 248 Thread Count.

        c.    Hotel Collection sheets sold by TJX were represented to be 800 Thread
             Count. However, when measured in accordance with industry standards,
             these sheets actually had a 423 Thread Count.

      46.     The TJX price tag attached to Named Plaintiff Adam's sheet package, which

serves, in part, as the basis of the bargain, states (Exhibit B):



TJX's label represents that consumers can "compare" the sheets with different thread count

sheets and prices.

47.    The sheet products at issue are inherently unfit for their intended use as high quality luxury sheets because as a result of the lower thread count, the sheets are of lower quality, softness, comfort, durability, and longevity than they otherwise would if they were the represented thread count and quality as stated on the labeling and price tags.

48.    Plaintiffs reasonably believed and relied on the thread count representations on the label and price tag of TJX's sheets.

49.    Plaintiffs relied on the representations regarding the higher-value high thread count on the packaging when purchasing the sheets and believed that they were purchasing sheets with the represented thread counts that were of higher quality and would be more durable, last longer, and be softer and better for sleeping than sheets with lower thread counts.

50.    Plaintiffs were deceived by the labels and price tags.

51.    Had Plaintiffs known that the sheets were not in fact 700 and 800 thread count sheets as represented, they would not have purchased them or would only have paid a lower price for the products if they had known the actual thread counts at the time of purchase.

52.    TJX knew or should have known that the advertised thread counts on the labels of sheets were inaccurate and over-stated.

53.    The sheets were imported and labeled by AQ Textiles and manufactured and manufactured by Creative Textiles, at the request of Defendant TJX, which then marketed and sold the misrepresented sheets to Plaintiffs and other consumers.

54.    On information and belief, like other retailers such as Macys and Ross, who sell sheets labeled by AQ Textiles and which are manufactured by Creative Textiles, TJX was involved in the design of the thread count representations on packaging and was aware of the insufficient testing or lack thereof og testing to validate the stated thread on the product labels.

17

55.     TJX knew or should have known that the advertised thread counts on the labels of the sheets were inaccurate and inflated. Nonetheless, TJX sold them to consumers as if they were of the higher quality represented on the labels.

56.     TJX's representations regarding the higher quality and thread counts of these sheets were deceptive and misleading according to industry standards as the Texas Department of Agriculture 2017 lab test results, conducted on the same Ultra Lux 800 thread count sheets Named Plaintiff Foley purchased, and investigation illustrate.

57.     TJX knew or should have known that the advertised sheet representations were inaccurate since they were not actually high quality, high thread count sheets. Nonetheless, TJX sold the sheets to consumers as if they were of the high quality represented on the labels.

58.     The sheet products at issue in this case are: Sterling Manor 700 Thread Count, Ultra Lux 800 Thread Count, and all other cotton/polyester blend sheet sets with inflated thread counts manufactured or supplied by AQ Textiles and/or Creative Textiles and sold at one of TJX's stores (the "sheets" or "products").

59.     The sheets share the same substantially similar common misrepresentation – that the thread count is higher than it actually is, are made of the same ingredients, and are tested using the same ASTM D3775 test method.

60.     The misrepresentation is substantially similar as to all sheets. The labels prominently display the inflated thread count amount (they each state "700" and "800" – *see* exhibits B and C) on the front of the packaging. The thread count number on the sheet's labels is printed in larger font than the other content on the labels.

61.     By improperly marketing and selling products it knows have over inflated thread counts contrary to industry standards, TJX has engaged in, and continues to engage in, practices

which are unconscionable, deceptive, and fraudulent, and which are based on false pretenses, false promises, misrepresentations, and the knowing concealment, suppression, or omission of material facts with the intent that others rely on such concealment, suppression, or omission in the advertising, marketing, selling, and distribution of sheet products.

62.     As a direct and proximate result of TJX's improper conduct, Plaintiffs and Class Members paid more for the sheets than they otherwise would have.

63.     By representing that the sheets had higher thread counts and qualities than they actually had, TJX unjustly profited from the sale of such sheet products to consumers.

64.     The inflated thread counts on the labels of the sheets induced Plaintiffs and other members of the Class to purchase the sheets when Plaintiffs and other members of the Class would not have purchased them, or would only have paid a lower price for the sheets if they had known the actual thread counts at the time of purchase.

## CLASS ACTION ALLEGATIONS

65.     Plaintiffs bring this class action pursuant to Rule 23 of the Federal Rules of Civil Procedure and seek to represent the following class:

> **Massachusetts Class**:
>
> All persons in the Commonwealth of Massachusetts who purchased bed sheets and pillowcases from Defendant TJX that were manufactured or supplied by Creative Textiles and AQ Textiles that were packaged or advertised with a representation regarding thread count.

66.     The class period commences on the first date that TJX marketed, advertised, sold and/or distributed the offending sheet products and ending on the date that the Court certifies this suit as a class action.

67.     Excluded from the Class is Defendant TJX, any parent, subsidiary, affiliate, or controlled person of Defendant, as well as the officers, directors, agents, servants, or employees of TJX.

68.     The Class is so numerous that joinder of all members is impracticable. The disposition of these claims in a class action will provide benefits to the parties, Class members, and the Court.

69.     Although the Class members' identities and numbers are presently unknown, TJX's records can readily determine this information using objective criteria. The Massachusetts Class likely consists of tens of thousands of purchasers throughout the United States.

70.     TJX's policy and practice of inflating thread counts and misrepresenting thread counts to consumers has affected all members of the Class. As such, there are many common questions of law and fact among Plaintiffs and the members of the Class, which predominate over questions affecting individual Class members. Common questions include, but are not limited to, the following:

a.  Whether ASTM D3775 Standard Test Method for Warp (End) and Filling (Pick) Count of Woven Fabrics was the generally accepted method in the textile industry for calculating thread count during the relevant time period;

b.  Whether Defendant knew or should have known that ASTM D3775 was the generally accepted method in the textile industry for calculating thread count during the relevant time period;

c.  Whether Defendant misrepresented thread counts on the sheets contrary to industry standards, by counting plies instead of actual threads in contravention of ASTM D3775;

d.  Whether Defendant advertised, sold, or delivered for sale sheet products that were advertised or represented to be of a certain thread count, but were, in fact, of a lesser thread count;

e.  Whether Defendant directed that AQ Textiles and/or Creative Textiles manufacture and label sheet product to be sold at TJX;

f.   Whether Defendant knew or should have known that persons would rely on the inflated thread counts in making their purchase decision;

g.   Whether Defendant's inflated thread counts violated the laws of the Commonwealth of Massachusetts;

h.   Whether the sheets are inherently defective and not fit for their intended use due to the lower thread count;

i.   Whether Defendant is liable for violations of the laws and statutes of the Commonwealth of Massachusetts;

j.   Whether Defendant's misrepresentations caused damages to members of the Class and the extent of those damages;

k.   Whether Defendant was unjustly enriched, and, if so, the extent to which it was unjustly enriched; and

l.   Whether Defendant should be enjoined from future conduct of the type complained of herein.

m.   Whether Defendant stopped selling or correctly repackaged its Ultra Lux 800 Thread Count sheets pursuant to the Texas Department of Agriculture letter of February 16, 2018.

71.     Plaintiffs' claims are representative of the putative Class because their claims are typical of the claims of the Class members and rely on TJX's misrepresentations and application of an industry standard. If brought and prosecuted individually, the claims of each putative Class member would require proof of the same materials and substantive facts, rely on the same remedial theories, and seek the same relief.

72.     Plaintiffs will fairly and adequately protect the interests of the Class and have retained attorneys experienced in class and complex litigation as counsel.

73.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. A class action will permit an orderly and expeditious administration of the claims of the Class, will foster economies of time, effort, and expense, and

will insure uniformity of decisions. The prosecution of individual actions by Class members would create the risk of (a) inconsistent or varying adjudications with respect to individual Class members; and (b) be grossly impracticable because the cost of vindicating an individual Class member's claim would likely exceed the value of the claim.

74.     TJX has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

75.     Due to the relatively small amounts of damaged to each member of the Class, a class action is superior to other available methods for the fair and efficient adjudication of the controversy which is subject of this action.

76.     The interests of judicial economy will be served by concentrating litigation concerning these claims in this Court, and there is no known difficulty that would be encountered in the management of this Class.

## EQUITABLE TOLLING

77.     Despite knowing that its sheet products were inferior because they did not contain the qualities that TJX advertised –  specifically with regard to thread counts – TJX concealed the unfit and non-conforming nature from Plaintiffs and the Class by affirmatively marketing and advertising its products as having certain qualities that they did not have.

78.     Plaintiffs and Class members did not and could not have known that their sheets did not have the qualities that they were advertised to have, as this fact was not disclosed to them and was not apparent from a superficial inspection the products.

79.     Plaintiffs and Class members could not have discovered the unfit and non-conforming nature of TJX's products through the exercise of due diligence. Due to TJX's

fraudulent concealment of the unfit and non-conforming nature associated with its sheets, TJX is estopped from asserting statute of limitations defenses to any of the claims alleged herein.

**COUNT ONE**
**Massachusetts Consumer Protection Act -- Mass. Gen. Laws Ch. 93A**

80.     Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

81.     Plaintiffs assert a claim under the Massachusetts Consumer Protection Act ("MCPA"), which makes it unlawful to engage in any "[u]nfair methods of competition or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws ch. 93A, § 2(1).

82.     By misrepresenting that its sheet products meet a certain thread count threshold that the products do not have, TJX committed unfair methods of competition and unfair and deceptive acts and practices in the conduct of a trade or commerce.

83.     Under Massachusetts law, it is an unfair or deceptive act for a seller to make any material representations of fact in an advertisement if the seller knows or should know that the material representation is false or misleading or has the tendency or capacity to be misleading. 940 C.M.R. § 6.04(1).

84.     By misrepresenting that its sheet products meet a certain thread count threshold that the products do not have, TJX made material representations of fact that it knew, or should have known, were false and misleading and that had the tendency and capacity to be misleading.

85.     TJX's conduct was consumer-oriented and this conduct had broad impact on consumers at large.

86.     As a result of TJX's actions, Plaintiffs and Class Members suffered injuries because they purchased goods they otherwise would not have bought, or paid more than they would have paid but for TJX's actions

87.     MCPA § 9 permits any consumer injured by a violation of the MCPA to bring a civil action, including a class action, for damages and injunctive relief.

88.     Massachusetts has a strong interest in applying MCPA to the conduct at issue here. Plaintiffs reside in Massachusetts, TJX is headquartered in Framingham, Massachusetts; and TJX advertised, marketed, and sold products in Massachusetts.

89.     Plaintiffs and the members of the Massachusetts Class are entitled to the greater of their actual damages and the statutory amount of $25.

90.     As a result of TJX's unlawful business practices, Plaintiffs and the members of the Massachusetts Class are entitled, pursuant to Massachusetts ALM GL ch. 93A *et seq*., to an order enjoining such future conduct and such other orders and judgments which may be necessary to disgorge TJX's ill-gotten gains.

91.     Plaintiffs made a written demand for relief in satisfaction of Mass. Gen. Laws ch. 93A, § 9(3) on July 10, 2017, before it added this cause of action to the amended class action complaint. TJX failed to respond to the demand letters in a reasonable manner.

92.     TJX's violation of Massachusetts ALM GL ch. 93A *et seq*. was knowing and willful. TJX's failure to grant relief upon demand was made in bad faith with knowledge or reason to know that the act or practice complained of violated Massachusetts ALM GL ch. 93A. Therefore, Plaintiffs and the members of the Massachusetts Class are entitled to recover not less than twice and not more than three times their actual damages and any applicable statutory penalties. Plaintiffs and the members of the Massachusetts Class are also entitled to attorneys' fees.

**COUNT TWO**
**Breach of Express Warranty**
**(Based on Massachusetts Law)**

93.     Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

94.     Plaintiffs and the Class were the intended targets of TJX's misrepresentations.

95.     Plaintiffs and the Class reasonably relied on TJX's misrepresentations.

96.     TJX's affirmations of fact and/or promises relating to its sheets and bedding products created express written warranties that the products would conform to TJX's affirmations of fact and/or promises.

97.     Alternatively, TJX's descriptions of its sheet products became part of the bases of the bargains, creating express written warranties that the products purchased by Plaintiffs and Class Members would conform to TJX's descriptions and specifications. In fact, the sheet products purchased by Plaintiffs and the Class did not so conform to the descriptions and specifications.

98.     TJX expressly warrants on the labels of the sheets and bedding products that they have certain thread counts. In fact, the products' thread counts are lower than promised and warranted.

99.     Plaintiffs and members of the Class relied on TJX's false representations as to the sheet products' thread counts.

100.    TJX has breached its express warranty.

101.    As a result of the foregoing, the Plaintiffs and the Class Members have suffered damages in that the value of the products they purchased was less than warranted by TJX.

102.    Plaintiffs and the Class were injured as a result of TJX's breach of their express warranties about its sheets and bedding products.

103.    By reason of the foregoing, Plaintiffs and the Class were damaged in the amount they paid for the falsely labeled sheet bedding products, together with punitive damages.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all claims so triable as a matter of right.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and the putative Class Members pray that the Court enter

judgment for them and against TJX as follows:

a. Certifying the Class pursuant to Rule 23 of the Federal Rules of Civil Procedure, certifying Plaintiffs as the representatives of the Class, and designating Plaintiffs' counsel as counsel for the Class;

b. Declaring that TJX's acts and practices, as described herein, constitute deceptive acts and unconscionable business practices that are unlawful under the applicable statutory and common law.

c. Awarding Plaintiffs and the Class permanent injunctive relief prohibiting, restraining, and enjoining defendants from engaging in the conduct complained of herein, including, but not limited to, manufacturing, marketing, advertising, selling, and distributing sheet products that have inflated thread counts;

d. Directing TJX to disgorge profits from its misleading and deceptive practices and to pay restitution to the Class;

e. Awarding Plaintiffs and the Class actual, compensatory damages in an amount to be proven;

f. Awarding Plaintiffs and the Class restitution of all monies paid to TJX as a result of unlawful, deceptive, and unfair business practices;

g. Awarding Plaintiffs and the Class exemplary damages in an amount to be proven;

h. Ordering TJX to issue corrective advertising;

i. Awarding Plaintiffs and the Class reasonable attorneys' fees, expert witness fees, pre- and post-judgment interest, and other costs in amounts to be determined by the Court; and

j. Granting any other further legal or equitable relief as this Court deems appropriate.

Dated: May 15, 2020

Respectfully submitted,

*/s/ Erica Mirabella*
MIRABELLA LAW LLC
132 Boylston Street, 5th Floor
Boston, MA 02116
T. (855) 505-5342
E. erica@mirabellallc.com

Charles LaDuca
Brendan Thompson
CUNEO GILBERT & LADUCA LLP
4725 Wisconsin Ave., NW, Suite 200
Washington, DC 20016
T. (202) 789-3960
F. (202) 789-1813
E. charles@cuneolaw.com
   Brendant@cuneolaw.com

Charles Schaffer
LEVIN SEDRAN & BERMAN LLP
510 Walnut Street, Suite 500
Philadelphia, PA 19106
T. (877) 882-1011
E. cshaffer@lfsblaw.com

Michael McShane
AUDET & PARTNERS, LLP
711 Van Ness Avenue
Suite 500
San Francisco, CA 94102
T. (415) 568-2555
E. mmcshane@audetlaw.com

Bruce W. Steckler
Stuart L. Cochran
L. Kirstine Rogers
STECKLER GRESHAM COCHRAN PLLC
12720 Hillcrest Road
Suite 1045
Dallas, TX 75230
T. (972) 387-4040
E. bruce@stecklerlaw.com
   stuart@stecklerlaw.com
   krogers@stecklerlaw.com